# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**FREDERICK VAIANA**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Apr 25 2014, 8:47 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MARVIN GARNER,                    )
                                  )
    Appellant-Defendant,          )
                                  )
        vs.                    )    No.  49A02-1310-CR-834
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Plaintiff.           )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa Borges, Judge
Cause No. 49G04-1004-FA-28313

**April 25, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Marvin Garner ("Garner") appeals his aggregate sentence of sixty years for his convictions for four counts of Class A felony child molesting.[1]

We affirm.

## ISSUE

Whether Garner's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

## FACTS

Garner met T.A. ("Mother") in 2001 at a Salvation Army rehabilitation facility, and in 2002 they began dating. At the time, Garner was paraplegic. He could not use his body from the waist down and, as a result, was impotent and confined to a wheelchair. However, in 2003, he received a penile implant and regained his ability to engage in sexual intercourse.

That same year, Garner, Mother, and Mother's four minor children moved in together. Mother had two sons—Dr.V. and Dv.V.—and two daughters—A.A. and T.V. A.A. was born in 1993, and T.V. was born in 1997. Garner, Mother, and the four children first lived together on Sangster Avenue in Indianapolis in 2003 and then moved to Yandes Street in Indianapolis in 2004. By the time Mother and Garner moved to Yandes Street, they were no longer dating, although they continued to live together. Mother started to date someone else and also worked two jobs, so she was frequently gone from home. When she was away, she paid Garner to babysit the four children.

---

[1] Ind. Code § 35-42-4-3.

One day in 2004, when T.V. was seven years old, Garner showed her his penis while they were watching television. At the time, the other three children were outside and Mother was at work. According to T.V., Garner then put his penis away because "he thought the boys were coming back in." (Tr. 20).

One night later in 2004, T.V. and A.A. were lying down in their room when Garner told them to come to his room. At the time, T.V. was still around seven years old, and A.A. was around ten or eleven years old. When the girls went to Garner's room, they found that he had taken off his pants and underwear. At Garner's orders, A.A. took off her pants and underwear, got on top of him, and had intercourse with him. After a while, Garner asked T.V. to take off her pants and underwear, and then he also had intercourse with her.

On another night, Garner came to the girls' room when everyone was asleep and told them to come to his room. Thereafter, the same progression of events occurred. When the girls arrived in Garner's room, he had moved to the bed and taken off his pants and underwear so that his penis was showing. He told A.A. to take off her pants and underwear and then he had intercourse with her. Then, he repeated the same actions with T.V. At trial, the State asked A.A. how many times "something like this . . . occur[red]" and A.A. replied "[i]t was a lot," although she could not remember details about each time. (Tr. 66). T.V. testified that Garner touched her inappropriately ten times, although she could not remember details about each time, either. A.A. also testified about another incident in 2005 when Garner made her put his penis in her mouth. At the time, Garner was sitting in his wheelchair with his clothes on but his penis sticking out.

3

In 2005, Mother moved residences, and A.A. and T.V. did not have any further incidents with Garner. However, they did not tell anyone about Garner's actions until 2009, when A.A. told a child protection services caseworker.

Subsequently, on April 8, 2010, the State charged Garner with seven counts of Class A felony child molesting. The trial court held a bench trial on August 12, 2013. At the conclusion of the State's evidence, the trial court granted Garner's motion to dismiss Counts VI and VII. At the conclusion of the trial, the court found Garner guilty of four counts of Class A felony child molesting and not guilty of one count. On September 17, 2013, it held a sentencing hearing and sentenced Garner to thirty (30) years for Counts I, III, and V, which it ordered to run concurrently. The trial court also sentenced Garner to thirty (30) years for Count IV, which was his molestation conviction relating to A.A., and ordered the sentence for Count IV to run consecutively to the sentence for Count I, which was Garner's molestation conviction relating to T.V. In total, Garner received an aggregate sentence of sixty (60) years, although the trial court provided that he could serve twenty (20) of those years in community corrections on home detention. Garner now appeals. Additional facts will be provided as necessary.

## DECISION

On appeal, Garner asks that we revise his sentence under Appellate Rule 7(B) based on the nature of his offense and his character. Essentially, Garner argues that we should take into account his age of 68 years and his physical infirmities. As stated above, Garner is paraplegic. In addition, after his confinement to the Marion County Jail, Garner fell, as a result of which he broke his hip and leg and lost 70% of his vision in one

4

of his eyes. He argues that the trial court should have given more weight to these factors when sentencing him because it is not likely that he will live to the end of his sentence. To the extent that Garner is asking us to reweigh the evidence, we will not address his argument as the relative weight or value given to mitigating circumstances is not subject to our review. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). However, we will review whether his sentence was appropriate under Appellate Rule 7(B).

While sentencing decisions rest within the sound discretion of the trial court, a reviewing court may revise a sentence pursuant to Appellate Rule 7(B) if, "after due consideration of the trial court's decision," it finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id.* at 493; *Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006) (quoting Ind. App. R. 7(B)). This Court is not required to use "great restraint," but we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(b) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State*, 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

Garner argues that his aggregate sentence is excessive and asks us to order his sentences to be served concurrently, rather than consecutively. He quotes the Indiana

5

Supreme Court's opinion in *Cardwell*, in which the Supreme Court stated that appellate courts should "focus on the forest-the aggregate sentence-rather than the trees-consecutive or concurrent, number of counts, or length of the sentence of any individual count." *Id.* at 1225. He contends that here we should, similarly, look at the length of the total sentence rather than the number of counts or whether they should be served concurrently.

The sentencing range for a Class A felony is twenty to fifty years, with an advisory sentence of thirty years. Accordingly, the trial court sentenced Garner to the advisory sentence for each of his four counts, although his aggregate sentence is sixty years because the trial court ordered him to serve his sentences for Counts I and IV consecutively. The trial court also provided that Garner could serve twenty years of his aggregate sentence in community corrections on home detention, rather than in the Department of Correction.

Even when we examine Garner's aggregate sentence, we cannot find that the trial court's sentence was inappropriate. In *Cardwell*, the Supreme Court elaborated on factors we should consider when evaluating a defendant's sentence. It stated that "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. The Court also noted that "[w]hether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences if for no other reason than to preserve potential

6

deterrence of subsequent offenses. Similarly, additional criminal activity directed to the same victim should not be free of consequences." *Id.* at 1225.

Here, both of the above factors are relevant to the nature of Garner's offense. His offenses were committed against multiple victims and against the same victims repeatedly. A.A. and T.V. collectively testified about at least four specific incidents and stated that there had been others, although they could not remember the details. Further, as the trial court noted, it is significant that both victims were very young when the offenses occurred and that Garner was in a position of trust with them as their babysitter. It is clear that Garner abused this position of trust. Finally, the trial court noted that it believed "the impact on the victims is serious and long lasting." (Tr. 234). The trial court stated that it came to this conclusion based on what it "learned from them during the trial and their demeanor throughout the trial. How difficult it was for them to relate to [the trial court] some pretty devastating things that had happened to them." (Tr. 234). Based on these factors, we conclude that the nature of Garner's offense was very serious.

Further, we do not see any reason to revise Garner's sentence due to his character. Garner's abuse of his position of trust was demonstrative of his lack of character. In addition, Garner has a long criminal history. Even though Garner apparently disputed some of this history, the trial court noted "but you can[not] dispute that you do have contact with the criminal justice system." (Tr. 231). While we recognize that Garner's age and infirmities are relevant, they are not so persuasive that we can overlook these negative aspects of his character.

7

For all of the above reasons, we conclude that the trial court's sentence was appropriate, and we decline to revise it under Appellate Rule 7(B).

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.