**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Nov 19 2014, 10:26 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Special Assistant to the State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RANDAL E. CROSLEY,               )
                                 )
    Appellant-Defendant,     )
                                 )
    vs.                      )    No. 28A04-1404-CR-157
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.      )

APPEAL FROM THE GREENE SUPERIOR COURT
The Honorable Dena A. Martin, Judge
Cause No. 28D01-1306-MR-2

**November 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

Following a guilty plea, Randal E. Crosley was convicted of murder, a felony; conspiracy to commit murder, a Class A felony; conspiracy to commit rape, a Class B felony; criminal confinement, a Class C felony; and dealing in a schedule IV controlled substance, a Class C felony. He was sentenced to an eighty-one year aggregate sentence in the Indiana Department of Correction ("DOC"). He raises one issue for our review: whether his eighty-one year aggregate sentence is inappropriate in light of the nature of his offenses and his character. Concluding that Crosley's sentence is not inappropriate, we affirm.

## Facts and Procedural History

Crosley and Jordan Buskirk were best friends. They sold synthetic marijuana ("spice"), marijuana, and pills together. Crosley and Buskirk also used drugs together. One day, while smoking spice, "it just popped in [their] heads . . . to see if [they could] rape and murder someone." Transcript at 37.

A few weeks after having the idea, Crosley and Buskirk were smoking spice and getting high together when they decided to stop at a store to buy handcuffs, an anal plug, restraint straps, condoms, and lubricant. They then went to another store, where they bought two kinds of rope and a twenty pound anchor. Crosley and Buskirk did not have a specific target in mind when they purchased these items.

The next day, they arranged to sell Katelyn Wolfe some pills and met her at a laundromat. After the sale, Crosley and Buskirk gave Wolfe a ride home. Later that same night, Crosley and Buskirk went to a strip club and got high smoking spice while sitting in

2

the car.  While there, Crosley texted Wolfe, and Wolfe agreed to buy more pills.  Crosley and Buskirk then left the strip club and headed towards Linton.  During the ride, they discussed making Wolfe their target, and since the items they purchased were in the trunk, they agreed to see if they could actually do it.  They picked up Wolfe at her house around midnight, and she agreed to get high with them.

After leaving Wolfe's house, they drove towards Midland to get high on a "country cruise."  Id. at 48.  Buskirk was driving; Crosley was in the passenger seat; Wolfe was sitting in the seat behind Buskirk.  They told Wolfe that they were going to pick up Crosley's wife; they did so, because she "didn't know where Mr. Crosley lived."  Id. at 52.  They got high and drove towards Landree Mine.  They stopped the car three times on the way to "see if [they] were going to do it," id. at 51, but the fourth time they stopped the car, they followed through with their plan.

Their fourth stop was on a heavily wooded county road.  Crosley grabbed a roll of duct tape, and Buskirk grabbed the handcuffs from the trunk of the car.  They opened the rear doors of the car, and Buskirk climbed on top of Wolfe.  Wolfe struggled, but Crosley and Buskirk eventually pulled her out of the car.  Buskirk and Wolfe fell on the ground, and Crosley put Wolfe in a choke hold.  Buskirk then handcuffed Wolfe's hands behind her back.  Crosley duct taped her mouth and pulled a white t-shirt over her head, which he also wrapped with duct tape.  Crosley then duct taped her feet together so she could not run. Crosley also punched her in the head and face, because she had tried to bite him during the struggle.  Crosley then used Wolfe's phone to "mak[e] an alibi."  Id. at 56.  Crosley asked Wolfe "if she was scared."  Id. at 58.  He told her "he was the boogie man."  Id.  He

3

told Buskirk that "[you] need to kill her." Id. With Wolfe lying face down on the ground, Buskirk then wrapped a rope around her neck until she stopped moving.

Crosley and Buskirk tied her body in the fetal position, attached the twenty pound anchor, and took her body to a coal mining pit where they thought the water would be deep. Crosley had searched the internet for the deepest lakes in Greene County. After dragging Wolfe's body from the car, Crosley kicked her body down the hill, causing her head to hit a stump, and then tossed her in the water. Crosley kept one of the handcuff keys as a souvenir.

Wolfe's body was found in the lake, and the police eventually connected Crosley and Buskirk to the murder. Buskirk confessed to everything. On June 13, 2013, Crosley was charged with Count 1, murder, a felony; Count 2, conspiracy to commit murder, a Class A felony; Count 3, conspiracy to commit rape, a Class B felony; Count 4, criminal confinement, a Class C felony; Counts 5 and 6, dealing in a schedule IV controlled substance, both Class C felonies. Pursuant to a plea agreement, Crosley pled guilty to Counts 1 through 5, and the State dismissed Count 6. Crosley and the State agreed that, except for the sentence imposed for his conviction of Count 3, all of his sentences would run concurrently. It was agreed that the trial court retained the discretion to order Crosley to serve his sentence on Count 3 consecutively.

Crosley was sentenced to an aggregate sentence of eighty-one years in the DOC on March 4, 2014, which included the following concurrent sentences: Count 1, sixty-three years; Count 2, fifty years; Count 4, eight years; and Count 5, eight years. He was

sentenced to eighteen years for Count 3, which ran consecutively. Crosley now appeals his sentence.

Discussion and Decision

I. Standard of Review

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences. See Childress v. State, 848 N.E.2d 1073, 1079-1080 (Ind. 2006). We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). This court's inquiry under Appellate Rule 7(B) is a discretionary exercise of our judgment not unlike the trial court's discretionary sentencing determination. Knapp v. State, 9 N.E.3d 1274, 1291-92 (Ind. 2014). We nevertheless exercise deference to the trial court's decision, both because the rule requires "due consideration" and because we recognize the trial court's unique perspective. Garner v. State, 7 N.E.3d 1012, 1014-15 (Ind. Ct. App. 2014). In determining whether a sentence is inappropriate, we may look to any factors appearing in the record. Stetler v. State, 972 N.E.2d 404, 408 (Ind. Ct. App. 2012), trans. denied. Our decision usually "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). "The burden is on the defendant to persuade the appellate court that his sentence is inappropriate." Conley v. State, 972 N.E.2d 864, 876 (Ind. 2012).

5

## II. Crosley's Sentence

Crosley was convicted of murder, one Class A felony, one Class B felony, and two Class C felonies. Pursuant to his plea agreement, only his sentence for conspiracy to commit rape, a Class B felony, could be ordered to run consecutively. At the time of Crosley's offenses, the sentencing range for murder was between forty-five and sixty-five years with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3.[1] And conspiracy to commit rape, a Class B felony, had a sentencing range of six to twenty years with an advisory sentence of ten years. Ind. Code § 35-50-2-5. The trial court found that the aggravating factors far outweighed any mitigating factors and sentenced Crosley to the DOC for sixty-three years for his murder conviction and eighteen years for his conspiracy to commit rape conviction. These sentences were to run consecutively, which resulted in an aggregate sentence of eighty-one years.

Appellate review focuses on the defendant's aggregate sentence, rather than the number of counts, length of the sentence on any individual count, or whether any sentences are concurrent or consecutive. Brown v. State, 10 N.E.3d 1, 8 (Ind. 2014). Crosley concedes that his crimes were serious and violent in nature, but argues that the nature of his character makes his eighty-one year aggregate sentence inappropriate. We disagree.

Regarding the nature of his offenses, Crosley's behavior is despicable. He planned a random, cold-hearted rape and murder. Crosley led Wolfe to believe he could be trusted and then capitalized on the opportunity to kill her for sport. He covered her face with a

---

[1] Because all of Crosley's sentences other than his sentence for conspiracy to commit rape ran concurrently, and because he was sentenced to the most time for the murder conviction, we mention only the sentencing range for murder and the sentencing range for conspiracy to commit rape.

shirt and punched her while her hands were handcuffed behind her back. He asked her if she was scared and told her that he was the boogie man. Crosley encouraged Buskirk to kill her, and after she had been killed, Crosley exhibited total disregard for the value of her life by kicking her lifeless body down a hill. He then tried to cover it up by creating an alibi. As further evidence of his disregard is the fact that Crosley kept a handcuff key as a souvenir. As the trial court stated, Crosley's offenses were "evil in nature." Tr. at 167.

Regarding his character, Crosley is a victim of abuse and neglect; he lived in twelve or thirteen different foster homes as a child; he has had mental health issues; and he became a habitual drug user at the age of thirteen. He also has a small child. We note that, in all respects, this case presents a tragedy. The circumstances in which Crosley grew up have, no doubt, been detrimental to his chances of success in society. However, there are no circumstances that justify Crosley's actions here.

At the time Crosley committed his offenses, he had a prior criminal history, he had failed to complete a pre-trial diversion program, and there was a warrant out for his arrest. Crosley also showed no remorse and instead was proud of being a drug dealer at his initial hearing. Crosley was not living a law-abiding life before or after these offenses occurred.

It is true that Crosley accepted responsibility for his actions by entering a guilty plea. However, given the amount of evidence the State had against Crosley, it appears that his decision was a pragmatic one. See Brown v. State, 907 N.E.2d 591, 594 (Ind. Ct. App. 2009) (a guilty plea may not be a significant mitigator where the defendant's decision to plead guilty is merely a pragmatic one). Pursuant to Crosley's plea agreement, the trial court retained the discretion to sentence Crosley to serve his sentence for Count 3

7

consecutively. The court did so and elected not to impose the maximum sentence on either Count 1 or Count 3. Given the nature of Crosley's offenses and his poor character, this was generous. As the trial court stated, "even a poor childhood does not give you an excuse or give you validation to take a human life." Tr. at 164-65. Crosley has not persuaded this court that his aggregate sentence of eighty-one years is inappropriate.

## Conclusion

In light of the nature of Crosley's offenses and his poor character, we conclude that Crosley's eighty-one year aggregate sentence is not inappropriate. The sentence is affirmed.

Affirmed.

BAKER, J., and KIRSCH, J., concur.