## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 19, 2015

Court of Appeals Case No.
49A05-1504-CR-142

Appeal from the Marion Superior Court.
The Honorable Lisa F. Borges, Judge.
Cause No. 49G04-1402-FB-7470

**Barteau, Senior Judge**

## Statement of the Case

[1] Michael Taylor appeals his convictions of unlawful possession of a firearm by a serious violent felon, a Class B felony, Indiana Code section 35-47-4-5 (2012); battery, a Class C felony, Indiana Code section 35-42-2-1 (2012); and his

adjudication as an habitual offender, Indiana Code section 35-50-2-8 (2005). Taylor also appeals his sentence of forty-five years. We affirm.

## Issues

Taylor presents two issues for our review, which we restate as:

I.     Whether his waiver of counsel was knowing, voluntary, and intelligent.

II.    Whether his sentence is inappropriate.

## Facts and Procedural History

On February 14, 2014, Taylor's on-again-off-again girlfriend, H.B., with whom he was living at the time, got up for work and was getting her two children ready for school. Taylor woke up and questioned H.B. about why she had to go into work so early and why she had to work on Valentine's Day. He also told her about some dreams he had had and accused her of cheating on him. H.B. told Taylor she had to get to work and reached into the closet for a sweater. As she did so, Taylor shot her in the leg while her two young children, ages six and five, were present in the home. Based upon this incident, Taylor was charged with unlawful possession of a firearm by a serious violent felon, battery, and being an habitual offender.

At a pre-trial conference on October 10, 2014, Taylor asked the judge for new counsel. The judge declined to give Taylor a new public defender and advised him that if he fired his current public defender, his options were to either hire private counsel or to represent himself. Taylor chose to fire his public defender

and represent himself. Following a conversation with the judge about self-representation and its requirements and pitfalls, and being read a detailed advisement, Taylor maintained his desire to represent himself. The judge retained the public defender in stand-by capacity and postponed the trial date to give Taylor time to prepare. In January 2015, Taylor was tried by a jury on the charges in three different phases beginning with the battery charge. In the second phase, he was tried on the charge of unlawful possession of a firearm by a serious violent felon, and the third phase dealt with the habitual offender charge. The jury found Taylor guilty of battery and unlawful possession of a firearm by a serious violent felon and adjudicated him to be an habitual offender. The trial court sentenced him to eighteen years executed for his conviction of unlawful possession of a firearm by a serious violent felon, enhanced by twenty years for the habitual offender adjudication. As to the battery, the court sentenced Taylor to seven years, to be served consecutive to the enhanced sentence for his conviction of unlawful possession of a firearm by a serious violent felon. Taylor now appeals.

# Discussion and Decision

## I. Waiver of Counsel

[5] Taylor first contends that his waiver of counsel was not knowing, voluntary, and intelligent. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. *McBride v. State*, 992 N.E.2d 912, 917 (Ind. Ct. App. 2013), *trans. denied*. This right encompasses a defendant's right to self-representation. *Id.* Nevertheless, before a defendant

waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *Jackson v. State*, 992 N.E.2d 926, 932 (Ind. Ct. App. 2013), *trans. denied*. We review de novo the trial court's determination that a defendant waived his right to counsel. *McBride*, 992 N.E.2d at 917.

[6] It is indisputable that in most criminal actions the defendant could better defend with guidance from counsel than by his own unskilled efforts. *Hopper v. State*, 957 N.E.2d 613, 617-18 (Ind. 2011). Therefore, the defendant who waives his right to counsel and asserts his right to self-representation should be informed of the dangers and disadvantages of doing so. *Parish v. State*, 989 N.E.2d 831, 838 (Ind. Ct. App. 2013). Our Supreme Court has stated that there are no prescribed "talking points" a trial court is required to include in its advisement to defendants. *Poynter v. State*, 749 N.E.2d.2d 1122, 1126 (Ind. 2001). Rather, the information that must be conveyed to defendants will depend upon case-specific factors, including the defendant's education or sophistication, the complex or easily-grasped nature of the charge, and the stage of the proceeding. *Hopper*, 957 N.E.2d at 618. The Court directed trial courts to come to a "considered determination" that a defendant is making a voluntary, knowing, and intelligent waiver. *Poynter*, 749 N.E.2d at 1126. In making this determination, the Court has considered four factors: "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the

defendant, and (4) the context of the defendant's decision to proceed pro se." *Id.* at 1127-28. The Court noted that when applying these factors, the trial court is in the best position to assess whether a defendant has knowingly, intelligently, and voluntarily waived counsel, and the trial court's decision will most likely be upheld where it has made the proper inquiries, conveyed the proper information, and reached a reasoned conclusion. *Id.* at 1128.

[7] Here, at a pre-trial conference on October 10, 2014, Taylor expressed his desire for new counsel because he did not believe he was being "properly represented" and because he and his counsel were not seeing "eye to eye" and were "bumping heads." Tr. p. 307. The trial court responded that he would not be permitted to "pick and choose" his counsel from available public defenders and indicated that his options were to either keep his current public defender, hire his own counsel, or represent himself, which would involve significant risks. *Id.* at 308. The trial court inquired as to Taylor's education, and he responded that he went to high school but didn't graduate and that he can read and write English. The trial court then explained that if Taylor proceeded pro se, he would have to do all the legal work himself. Specifically, Taylor was advised that he would have to select a jury, including challenging jurors according to the law; make opening and closing statements while possibly creating risk for himself through his statements; and make objections and appropriate motions to protect himself. In addition, the trial court informed Taylor that if he was not familiar with the rules of evidence, he would be at a real disadvantage and "in a world of hurt" because he has no legal training and the State's two

lawyers were familiar with the rules of evidence and had a great deal of experience in trying cases. *Id.* at 312.

[8] To the trial court's advisements, Taylor responded, "I mean, it seems like I am not getting nowhere with my attorney so what am I going to do about it? I am not going to take the risk." *Id.* The trial court explained that his current counsel had a lot of experience, knew the evidence and how to object to it, was in charge of how the case was prepared, and would not file something with the court that would hurt his case or be looked upon with disfavor; however, if Taylor did not like his advice, he did not have to take it. Taylor responded to this information by stating, "I would rather represent myself if I can't get appointed another court attorney." *Id.* at 313.

[9] Beyond the colloquy just discussed, the court read the following advisement to Taylor:

> The defendant would be solely responsible for subpoenaing witnesses. The defendant must comply with the Indiana Rules of Evidence. The defendant is solely responsible for preserving issues for appeal at any trial or sentencing phase and the defendant further understands that the defendant is waiving any appeal based on ineffective representation of counsel. An attorney would be better at investigation and interrogation and would generally have greater skills than does the defendant. The defendant's incarceration is a disadvantage in preparing a defense. The defendant is at a disadvantage with the State being represented by an attorney and may actually conduct a defense to the defendant's own detriment. The defendant is at a disadvantage when trying to elicit testimony from himself at trial. The defendant will lose his ability to proceed pro se if his

behavior is abusive, disruptive, and/or threatening during any part of the trial. The Court will appoint stand-by counsel in an advisory capacity to answer questions but who cannot actively participate in the trial unless the Court so orders. The defendant understands the charges against him, the possibility there may be lesser included offenses, and the possibility there may be defenses or mitigating circumstances the defendant may not be aware of.

*Id.* at 317-18. The trial court then inquired as to whether Taylor had been threatened or promised anything to waive counsel, to which Taylor replied, "Not at all." *Id.* at 319. In addition, the trial court asked Taylor if he understood that he would receive no special treatment from the court due to his lack of legal expertise, if he believed proceeding pro se was in his best interest despite all of the court's advisements, and if he still wanted to waive his right to counsel and proceed pro se. Taylor responded affirmatively and signed a form requesting to proceed pro se that listed these advisements. *See* Appellant's App. pp. 64-65.

[10] With regard to the *Poynter* factors, the transcript shows that the trial court's inquiry was not merely cursory. The trial court questioned Taylor about his education level, which revealed he had attended some high school. The court engaged in a lengthy dialogue with Taylor regarding the dangers of representing oneself. The trial court also inquired into Taylor's legal knowledge such as whether he had read the rules of evidence or knew how to go about picking a jury, indicated that the State's two attorneys were well-versed in the rules of evidence and jury trials, and read him a lengthy advisement reiterating the disadvantages of self-representation.

[11] At the pre-trial conference, the trial court read the habitual offender count to Taylor, indicating that Taylor had previously been convicted of auto theft as a Class D felony, resisting law enforcement as a Class D felony, and criminal confinement as a Class D felony. This information demonstrates that Taylor is not a newcomer to the criminal justice system and its proceedings. Specifically, Taylor obviously knew he had the right to counsel because he was being represented by court-appointed counsel at the time he indicated his desire to represent himself.

[12] At the pre-trial conference Taylor first expressed his desire to sever his relationship with his current public defender and be assigned a new public defender. When the trial court responded that he would not be permitted to cherry-pick his counsel from available public defenders, Taylor informed the court of his desire to represent himself. Here, we pause to note that a defendant's right to counsel is not an absolute right to be represented by counsel of his choosing. *McBride*, 992 N.E.2d at 917. Therefore, a trial court may, in its discretion, deny a defendant's request for a new court-appointed attorney. *Id.* Taylor does not argue, and we find no indication, that the court abused its discretion by denying his request for a new public defender.

[13] Further, the final pre-trial conference was held on a Friday. Taylor's trial on these charges was set for the following Tuesday. Once the trial court approved his request to proceed pro se, Taylor asked the court about obtaining evidence and documents, and the court continued the trial on his behalf with his public defender appointed as stand-by counsel.

[14] In his brief, Taylor claims that his statements during his dialogue with the trial court relating to him not having knowledge of how to choose a jury, obtain a suppression hearing, or subpoena witnesses, as well as his statement that he was "not quite really comprehending what is going on" demonstrates that he was not knowingly waiving his right to counsel. Tr. p. 311. However, reviewing Taylor's statement in context reveals that his failure to comprehend was not with regard to his waiver of counsel and decision to represent himself. Rather, he was expressing confusion about the trial process, particularly about how to obtain a suppression hearing, hold a deposition, or obtain the information that he believed his court-appointed attorney had refused to obtain for him. A defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. *See Faretta v. California*, 422 U.S. 806, 835-36, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975).

[15] Taylor also alleges that, under the *Poynter* factors, the trial court's inquiry fell short because "the judge made no effort to investigate the cause of Mr. Taylor's inability to comprehend what was going on" and that "perhaps [further] inquiry would have elicited the information that was later revealed regarding his schizophrenia." Appellant's Br. p. 10. As we explained in the previous paragraph, Taylor's lack of understanding was as to the legal procedures involved in a jury trial, which are not relevant to the evaluation of whether he knowingly waived his right to counsel. *See Faretta*, 422 U.S. at 835-36.

[16] Further, the information about Taylor's alleged schizophrenia to which he cites is the testimony of his mother at his sentencing hearing that she was told by

someone that Taylor was hearing voices before this incident. Tr. p. 266. He also points to his own statements in his pre-sentence investigation report that he experienced symptoms of schizophrenia around the age of nine or ten and that he was diagnosed with schizophrenia as a teen. He stated that he experiences auditory hallucinations that command him to do things and that he had not taken his medication for approximately two years. PSI p. 13. In her testimony, his mother denied that he had symptoms at a young age and indicated an onset possibly when he was twenty. Tr. pp. 268-69. Taylor did not inform the trial court of his alleged illness at the pre-trial conference or any other time prior to sentencing. Now on appeal, he makes no argument that his alleged illness had any impact on his understanding of the right he was waiving and the pitfalls of self-representation.

[17] The facts and circumstances of this case demonstrate that the trial court fully and properly inquired into Taylor's decision to proceed pro se and thoroughly warned him of the dangers and disadvantages of doing so. Thus, we conclude that Taylor voluntarily, knowingly and intelligently exercised his right of self-representation.

## II. Sentence

[18] As his second allegation of error, Taylor asserts that his forty-five year sentence is inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that we may revise a

sentence authorized by statute if, after due consideration of the trial court's decision, we determine that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The principal role of appellate review under Rule 7(B) is to attempt to leaven the outliers, not to achieve a perceived "correct" result in each case. *Garner v. State*, 7 N.E.3d 1012, 1015 (Ind. Ct. App. 2014). A defendant bears the burden of persuading the appellate court that his or her sentence has met the inappropriateness standard of review. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007).

[19] To assess whether the sentence is inappropriate, we look first to the statutory range established for the class of the offense at the time the offense occurred. The offense of unlawful possession of a firearm by a serious violent felon is a Class B felony, for which the advisory sentence was ten years, with a minimum sentence of six years and a maximum sentence of twenty years. Ind. Code § 35-50-2-5 (2005). Taylor was also convicted of battery, a Class C felony, for which the advisory sentence was four years, with a minimum sentence of two years and a maximum sentence of eight years. Ind. Code § 35-50-2-6 (2005). In addition, Taylor was adjudicated an habitual offender, for which the court

enhanced his serious violent felon conviction by twenty years. The minimum sentence enhancement for this adjudication was ten years, and the maximum was thirty years. Ind. Code § 35-50-2-8(h). Thus, Taylor did not receive a maximum sentence for any of his convictions or his habitual offender adjudication.

[20] The trial court also ordered consecutive sentences for Taylor's convictions of unlawful possession of a firearm by a serious violent felon and battery. Taylor complains that the imposition of consecutive sentences renders his sentence inappropriate. With few exceptions, it is within the trial court's discretion to order sentences be served concurrently or consecutively, and the court can consider aggravating circumstances in making such a determination. *See* Ind. Code § 35-50-1-2 (2013). Further, a single aggravating circumstance may be sufficient to support the imposition of consecutive sentences, *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied*, and, here, the trial court found several. Ultimately though, the length of the aggregate sentence and how it is to be served are the issues that matter. As our Supreme Court explained, in the majority of the cases "whether [the sentences] are derived from multiple or single counts, involve maximum or minimum sentences, and are concurrent or consecutive is of far less significance than the aggregate term of years." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Here, we cannot say that the decision to impose consecutive sentences in and of itself renders Taylor's sentence inappropriate. Instead, we review the aggregate forty-five year sentence in light of the nature of the offenses and the character of the offender.

[21] As to the nature of the current offenses, Taylor shot H.B. in the presence of H.B.'s two young children. Moreover, Taylor, who was forbidden by law from possessing a firearm, nonetheless possessed a firearm and used it to shoot H.B. apparently because he was upset that she had to work on Valentine's Day and/or for some dreams he had. H.B.'s statement that was read at Taylor's sentencing indicated that she and her young children have had a difficult time dealing with this incident and that her children were still in counseling.

[22] With regard to the character of the offender, we note that Taylor has accumulated an extensive criminal history. He began his criminal career in 1993 as a juvenile, and his conduct resulted in fifteen arrests and eight adjudications. At least one of his arrests as a juvenile involved felony charges which were later waived into adult court. As an adult, Taylor has amassed ten felony convictions, excluding the instant offenses, for crimes such as auto theft, carrying a handgun without a license, resisting law enforcement, dealing in cocaine or narcotic, possession of a controlled substance, criminal confinement, and possession of marijuana, as well as two misdemeanor convictions. At the time the pre-sentence investigation report was prepared, he had two additional B felony charges pending.

[23] Further, as discussed previously, Taylor claims to have been diagnosed with schizophrenia, and, on appeal, places the blame for this offense and the "development of his character" squarely on the shoulders of his alleged mental illness. Appellant's Br. p. 16. Taylor testified that his schizophrenia began at the age of nine or ten with a diagnosis in his teen years; however, his mother

testified that she did not believe he had symptoms at a young age and indicated a diagnosis possibly at the age of twenty. Even in the face of this uncertainty, the trial court identified Taylor's schizophrenia as a mitigator but noted that he had admitted to failing to take his medicine for several years.

[24] Additionally, Taylor stated, and the trial court noted, that he has a long history of substance abuse involving alcohol and numerous illegal drugs. Although he previously attended substance abuse treatment, Taylor admitted to smoking a cigarette laced with embalming fluid on the night prior to this incident.

[25] At the end of the day, whether we regard a sentence as appropriate turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Here, Taylor was illegally in possession of a firearm and shot his girlfriend while her two young children were in the home. Given the copious arrests and convictions amassed by Taylor, it is clear that his pattern of illegal activity appears to be escalating and that he has no intention of changing his lifestyle from one of crime and substance abuse to one of clean living. Consequently, we do not find his aggregate sentence of forty-five years to be inappropriate in this case.

## Conclusion

[26] For the reasons stated, we conclude that Taylor knowingly, voluntarily, and intelligently waived his right to counsel and proceeded to trial pro se. In

addition, we conclude that his sentence was not inappropriate in light of his offenses and his character.

[27] Affirmed.

[28] Kirsch, J., and Mathias, J., concur.