## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 18 2019, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jose A. Soto,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 18, 2019

Court of Appeals Case No.
18A-CR-2135

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D06-1710-F1-17

**Bailey, Judge.**

# Case Summary

[1] Jose A. Soto ("Soto") appeals his convictions for one count of child molesting as a Level 1 felony,[1] and a second count of child molesting as a Level 4 felony.[2] He also appeals his forty-five-year sentence for the Level 1 felony.

[2] We affirm.

# Issues

[3] Soto raises two issues which we restate as follows:

1. Whether the trial court erred in admitting into evidence Soto's federal drug conviction, his own statement referring to "cho mo" and a witness's definition of that term, and the video deposition of a forensic nurse.

2. Whether his forty-five-year sentence is inappropriate given the nature of the offense and his character.

# Facts and Procedural History

[4] In late May of 2017, Soto was released from the Department of Correction ("DOC"), placed on electronic monitoring, and began living with Kelly Geier ("Geier"), Courtni Soto ("Courtni"), M.S., and Jo.S. at Geier's home in Fort Wayne. Soto is the biological father of both M.S., who was age nine at the

---

[1] Ind. Code § 35-42-4-3(a).

[2] I.C. § 35-42-4-3(b).

time, and Jo.S., who was age seven. Courtni is the biological mother of M.S. and Jo.S., and Geier is Courtni's mother. Soto had not been involved in his children's lives for several years due to his incarceration.

[5] On September 13, 2017, Courtni and Jo.S. were at the hospital visiting a relative. J.S., Jr., who is Soto's son with another woman and was age twelve at the time, was spending the night at Geier's house. Geier was in her bedroom doing some homework while Soto was with M.S. and J.S., Jr. watching a movie in the back bedroom that he shared with Courtni. M.S. and J.S., Jr. began to argue, and Soto told M.S. to come lie on the floor with him or he would spank her. While M.S. was on the floor and almost asleep, she "felt something touch her leg." Tr. Vol. I at 163. She then felt Soto touch her stomach and slide his hand underneath her underwear and begin touching her vagina. Soto then used M.S.'s own hand to "dive" her fingers into her vagina. *Id.* at 166. After touching M.S.'s vagina Soto placed her hand down his pants and onto his erect penis. M.S. screamed and tried to leave the room. Soto told her that if she told her grandmother what happened, she "wouldn't the-F-word survive," and he stopped her from leaving by choking her with his arm. *Id.* at 168.

[6] Geier had exited her room at the time of Soto's threat and heard him say "if you tell grandma[,] you're not getting out of here alive," as she saw Soto blocking M.S.'s exit from the back bedroom. *Id.* at 137. J.S., Jr. was awoken by M.S.'s screams and also saw Soto blocking M.S. from leaving the room. Geier yelled "what the hell is going on," and M.S. was able to wiggle and kick

past Soto as she exited the bedroom crying and screaming that Soto had touched her. *Id*. Soto followed M.S. into Geier's bedroom, Geier told Soto to "get the F out of my room," and M.S. ran out to the garage and locked herself inside one of the vehicles. *Id*. at 140. As Geier walked to the back bedroom to find out what had occurred she overheard Soto tell J.S., Jr. "I'm not a cho mo," and she called the police. *Id*. at 142. At trial, Soto did not object to the latter testimony.

[7] During the course of the ensuing law enforcement investigation, M.S. was taken to the Bill Lewis Center where she gave an "incredibly detailed" statement to forensic interviewer Sara Drury ("Drury") and was able to answer all questions asked of her, as well as clarify and correct details of the incident. *Id*. at 223. Angela Mellon ("Mellon"), a sexual assault examiner at the Fort Wayne Sexual Assault Treatment Center, also examined M.S. in the course of the investigation.

[8] On October 25, 2017, the State charged Soto with two counts of child molesting. On May 22, 2018, Soto proceeded to a jury trial. During a pre-trial hearing Soto's counsel asked the trial court to allow Soto to mention his previous federal drug conviction as an exception to the general bar against the admission or mention of past crimes. Soto also entered into a stipulation with the State to introduce into evidence a video deposition of Mellon which had been taken the prior week as a substitute for live testimony since Mellon was unavailable for trial.

[9]     During opening statements the State did not mention Soto's prior drug conviction. However, in Soto's opening statement, his counsel informed the jury that "Soto was convicted for Conspiracy to Distribute Narcotics and had been out of the children's lives almost the entire time." Tr. Vol. I at 123. He noted that "[u]nfortunately to his children [Soto] is a stranger who they are told is their father. They don't know him. Imagine how [un]comfortable it must be for a child to be told this is your dad, go hug him." *Id*. at 124.

[10]    During his cross-examination of Geier, Soto's counsel questioned Geier as follows:

> Q:    Then you stated that you overheard Mr. Soto tell J.S., Jr.
>       I'm no Cho Mo, is that correct?
>
> A:    Yes, I did hear that.
>
> Q:    Believing that to mean I'm not a child molester?
>
> A:    Correct.

*Id*. at 149, l. 10-14.

[11]    The jury found Soto guilty as charged. On June 29, 2018, the court sentenced Soto to serve an aggregate forty-five-year term in the DOC for his Level 1 and Level 4 felony child molesting convictions. The trial court found no mitigating circumstances present and found aggravating circumstances present in the form of Soto's criminal history and the violation of trust Soto committed when he molested his young daughter months after being released from prison, at a time

when his family was trying "to welcome him back into their home." Tr. Vol. III at 22. Soto now appeals his convictions and his sentence.

# Discussion and Decision

## Admission of Evidence/Invited Error

[12] Soto challenges the trial court's decisions to admit three pieces of evidence. We review a trial court's admission or exclusion of evidence for an abuse of discretion, "which occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007) (citation omitted). However, "as a preliminary matter, appellate courts must first determine whether the appellant properly preserved the alleged error at the trial level." *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018).

[13] Usually, a party's failure to object to an alleged error at trial results in waiver. *Id*. And when a passive lack of objection is coupled with a counsel's active requests, "it becomes a question of invited error." *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014). "Under the invited error doctrine, 'a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.'" *Baugh v. State*, 933 N.E.2d 1277, 1280 (Ind. 2010) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)). Rather, such invited error "is not reversible error" and is "not subject to appellate review." *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995). And

invited error is not fundamental error, *id.*, even when the error is of constitutional significance, *Brewington*, 7 N.E.3d at 975.

[14] Here, Soto invited each evidentiary error he now challenges as fundamental error. It was Soto who made a motion in limine requesting that evidence of his federal drug conviction be admissible. Tr. Vol. I at 5. And Soto was the only party who raised his federal drug conviction and imprisonment before the jury. He did so in his opening statement, apparently to explain why his children might be "uncomfortable" with him due to his extended absence. *Id.* at 124. Having raised the conviction himself, he may not now complain that evidence of the conviction was fundamental error. *See Baugh*, 933 N.E.2d at 1280; *see also Brewington*, 7 N.E.3d at 975 (holding that invited error precludes relief from counsel's strategic decisions gone awry).

[15] Similarly, Soto's counsel invited the testimony explaining that the term "cho mo" means "child molester." Tr. Vol. I at 149. Having elicited that evidence himself, Soto cannot now challenge it on appeal. *See Roach v. State*, 695 N.E.2d 934, 941-42 (Ind. 1998) ("Defendant cannot raise this issue on appeal as the testimony was given in response to a question by defendant's own counsel."). The same goes for the admission of Mellon's video deposition; Soto affirmatively stipulated to the admission of that deposition. "By stipulating, without qualification, to the evidence that he now challenges, Defendant invited the very error he now claims is reversible." *Ellis v. State*, 707 N.E.2d 797, 803 (Ind. 1999). Such invited error "preludes relief" on a fundamental error theory. *Brewington*, 7 N.E.3d at 974.

[16] Because Soto invited the admission of the three pieces of evidence that he now calls "error," he cannot now challenge the admission of that evidence on appellate review.

## Inappropriateness of Sentence

[17] Soto contends that his sentence is inappropriate in light of the nature of the offense and his character. Article 7, Sections 4 and 6, of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *See, e.g.*, *Sanders v. State*, 71 N.E.3d 839, 843 (Ind. Ct. App. 2017), *trans. denied*. This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id*. Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *Id*. (citing Ind. Appellate Rule 7(B)). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed is inappropriate. *Robinson v. State*, 61 N.E.3d 1226, 1228 (Ind. Ct. App. 2016).

[18] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that

come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19] Soto contends that the nature of the offense does not support a forty-five-year sentence. When considering the nature of the offense, we look at the defendant's actions in comparison to the elements of the offense. *Cannon v. State*, 99 N.E.3d 274, 280 (Ind. Ct. App. 2018), *trans. denied*. Child molestation is among the most severe and heinous of offenses and, here, the crime was made worse by the fact that Soto molested his own daughter, who was only nine years old at the time. As the trial court properly recognized, this criminal behavior was a violation of the sacred trust between a parent and a child. Moreover, Soto threatened M.S. with violence and even death if she disclosed what happened, and he used physical force to choke her and keep her from escaping from him. As our Supreme Court has noted, "[a] harsher sentence becomes more appropriate as the threatened harm increases in severity, especially when the defendant directly threatens the victim or a witness." *Hamilton v. State*, 955 N.E.2d 723, 728 (Ind. 2011). Soto has failed to provide

compelling evidence portraying in a positive light the nature of his offense, such as restraint, regard, and lack of brutality—quite the opposite.

[20] Soto also points out that he molested his daughter once—an "isolated incident"—and asserts that this fact makes an increase in his sentence beyond the advisory sentence inappropriate. Appellant's Br. at 28. Soto cites no authority for this contention, and we find none. Although repeated criminal acts against a victim may be considered aggravating, *see Garner v. State*, 7 N.E.3d 1012, 1015 (Ind. Ct. App. 2014), we find no authority for the proposition that a defendant's molestation of a child "only" once mitigates against a sentence above the advisory sentence. *See Brown v. State*, 760 N.E.2d 243, 248 (Ind. Ct. App. 2002) ("Although one can imagine facts that might be worse than those before us here, such does not lessen the severity of [defendant's] conduct or bolster the quality of his character by comparison."), *trans. denied*.

[21] We acknowledge that Soto's sentence is fifteen years longer than the advisory sentence for a Level 1 felony child molesting offense. I.C. § 35-50-2-4(c). However, given Soto's criminal history, the heinous nature of the offense, Soto's betrayal of his own young child's trust, and the violence and threat of violence that accompanied the offense, we cannot say Soto's sentence is inappropriate in light of the nature of the offense.

[22] Soto asserts that the advisory sentence of thirty years for his crime would be more appropriate given that his criminal history does not include prior offenses

that are "similar in gravity or nature to the current offense." Appellant's Br. at 27. First, we note that Soto has felony convictions for drug possession and robbery, both of which could be considered "grave" crimes. And he has another conviction involving violence, i.e., a domestic battery conviction. Second, our Rule 7(B) analysis does not focus on whether there are more appropriate sentences, only on whether the sentence imposed is inappropriate. *King*, 894 N.E.2d at 268. Thus, we focus less upon comparing the facts of a case to others, whether real or hypothetical, and more upon the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about his character. *Anglin v. State*, 787 N.E.2d 1012, 1019 (Ind. Ct. App. 2003), *trans. denied*; *see also Brown*, 760 N.E.2d at 248.

[23] Soto also maintains that the sentence is inappropriate in light of his character. In support of that claim, he notes that his criminal history does not include any sex offenses or other grave crimes. However, his criminal history of seven misdemeanor convictions and three felony convictions includes a conviction for domestic battery and felony convictions for drug possession and robbery. Those convictions led the trial court to note that, taken as a whole, Soto's criminal history indicates his "complete disregard for the rules of this society." Tr. Vol. III at 22. Against this aggravator, Soto points to no mitigating evidence, such as substantial virtuous traits or persistent examples of good character, and the trial court found none. *Stephenson*, 29 N.E.3d at 122.

[24] In addition, as the trial court noted, Soto took advantage of the kindness and trust of his family in welcoming him back into the home after his incarceration.

In reaching the conclusion that Soto "significantly violated a trust" of his family, the court pointed to the letters from the victim that were submitted on sentencing. This was additional evidence of Soto's poor character.

[25] Moreover, Soto showed no acceptance of responsibility or remorse for the sexual molestation he committed against his own young daughter. "A trial court may consider as an aggravator the defendant's lack of remorse." *Sloan v. State*, 16 N.E.3d 1018, 1027 (Ind. Ct. App. 2014). A lack of remorse is displayed by the defendant "when he displays disdain or recalcitrance," as opposed to merely maintaining his innocence. *Id*. (quotation and citation omitted). At sentencing, Soto stated:

> I don't want to sound cocky and I don't want to sound ignorant, but they played a role. You know, they deserve an award, an Oscar for the role that they played. You know, as bad as they want me to apologize, Your Honor, for whatever reason going on, I can't. I ain't do nothing [sic] wrong.

Tr. Vol. III at 21. By appearing to blame the minor victim and/or her family, Soto's statement goes beyond merely asserting his innocence of the crimes and instead shows a disdain that is evidence of his poor character. We cannot say that his sentence is inappropriate in light of his character.

# Conclusion

[26] Because Soto invited the admission of the three pieces of evidence that he now calls error, he cannot challenge the admission of that evidence on appeal. And

his sentence is not inappropriate in light of the nature of the offense and his character.

[27]    Affirmed.

Bradford, J., and Brown, J., concur.