# FOR PUBLICATION



FILED
Aug 15 2013, 5:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH MCBRIDE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1211-CR-547 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1203-FB-15543

**August 15, 2013**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Following a jury trial, the appellant-defendant, Kenneth McBride, was found guilty of Counts I and II, class B felony criminal Confinement,[1] Counts III, IV, and V, class B felony Robbery,[2] and Count VI and VII, class C felony Battery,[3] for which the trial court sentenced McBride to an aggregate term of thirty years.

McBride appeals, asking our Court to vacate all of his convictions or, in the alternative, to revise his sentence pursuant to our authority under Indiana Appellate Rule 7(B). Specifically, McBride claims that the trial court committed reversible error when it allowed him to proceed pro se because he did not make a knowing, voluntary, and intelligent waiver of his right to counsel. McBride also contends that the trial court committed fundamental error when it admitted evidence obtained through an improper show-up identification procedure and that his thirty-year executed sentence is inappropriate in light of the nature of the offenses and his character.

Finding no reversible error and concluding that McBride's sentence is not inappropriate, we affirm.

FACTS

On March 7, 2012, around 4:30 p.m., Officer Ryan Irwin of the Indianapolis Metropolitan Police Department (IMPD) responded to the dispatch of a robbery in progress at the Oriental Market (Market), a grocery store on Lafayette Road owned by

---

[1] Ind. Code § 35-42-3-3.

[2] I.C. § 35-42-5-1.

[3] I.C. § 35-42-2-1

Bay Le Zhu (Zhu) and her husband. Officer Irwin arrived within one minute and found that the employees, two of whom had obvious injuries, and Zhu's six-year-old son Brian were locked inside the Market. Irwin also found a twelve gauge shotgun lying on the ground next to the market.

It was later established that Zhu, Brian, Zhu's nephew Yixiu Chen (Yixiu), Kia Wong (Wong) and his wife, Cai Nong Chen (Cai), were all at the market when McBride and two other men, each armed and wearing dark clothing, gloves, and masks, entered the Market through a back door and locked the door behind them. The men confined everyone in the kitchen, striking several of the victims with their guns and binding their hands and legs with duct tape. After the men demanded money, Zhu gave them $1200 that she had in her pocket and was escorted out of the kitchen to the cash register, where they took additional money. When Van Duong, a regular customer, came by, he noticed that the door was locked even though the lights were on and the "open" sign was displayed. Suspicious, Duong peered through the Market window and observed masked men but none of the store employees. When he looked again, he saw Zhu taking money from the register, and she gave him a sign to call for help.

McBride and the other men escaped in Wong's vehicle, taking with them Wong's cell phone, Yixius's cell phone and many of his keys including his house and the Market keys, Zhu's purse and keys, the $1200 that Zhu had on her, and the money from the cash register. Duong got a good look at McBride and provided the license plate number of the getaway vehicle to the 911 dispatcher. He also reported that the vehicle had traveled

3

south on Lafayette Road. Officers located the vehicle after a citizen reported seeing someone flee from the vehicle.

At around 5:00 p.m., McBride and his co-defendant, Adrian Jackson,[4] were apprehended. They were found crouched down between a wood deck area and a garage, wearing dark clothing and shoes matching those worn by the robbers. Around and under the deck where McBride and Jackson were apprehended, the officers recovered several pieces of dark clothing, including a stocking cap mask, three dark gloves, the distinctive jacket worn by one of the men during the robbery with a Bic lighter in it that matched McBride's DNA, multiple cell phones, a set of keys, and a small purse, all of which were items taken from the victims during the robbery. Additionally, a piece of foreign currency and a rifle with Jackson's DNA were recovered. Officers also found $622 on McBride and $1106 on Jackson.

Jackson and McBride were arrested and taken to the police station and Zhu, Cai, Wong, and Duong were brought over for a show-up identification. All but Wong identified either one or both men as the robbers with seventy to one hundred percent certainty. Duong positively identified both men, stating that Jackson was the driver and McBride was the front seat passenger in the getaway vehicle.

On March 9, 2012, the State charged McBride with Counts I and II, class B felony criminal confinement, Counts III, IV, and V, class B felony robbery, and Counts VI, VII, VIII, class C felony battery. On March 13, 2012, McBride was appointed a public

---

[4] Adrian Jackson's appeal has been assigned appellate cause number 49A05-1211-CR-553, and we hand down that appeal contemporaneously with this one.

4

defender. On that day he also made a pro se request for a speedy trial, but on May 10, 2012, his counsel requested a continuance, which the trial court granted. McBride was unhappy about his appointed counsel's decision to request a continuance despite his speedy trial request and proceeded to file motions and briefs pro se. McBride claimed that because his appointed counsel sought a continuance against his will and was not doing what he asked her to do, she had violated his constitutional right to counsel as well as the rules of professional conduct.

On July 31, 2012, a waiver of counsel hearing was held, during which McBride asked the trial court if he could proceed as co-counsel. This request was denied because the trial court stated he was attempting to take the lead in his own defense, thus placing his counsel at risk. McBride then petitioned the trial court to proceed pro se.

At a later hearing on August 16, 2012, the trial court questioned McBride about his knowledge of the requirements for pro se litigants and advised McBride of the responsibilities, dangers, and disadvantages that he might face by proceeding pro se. The trial court also told McBride he was responsible for objections and that objections are the manner in which he could preserve issues for appeal. The trial court specifically told McBride that if objections are not made during trial, that particular issue would be waived on appeal. During the advisement of rights hearing, the trial court was not convinced that McBride would be prepared to proceed pro se and expressed this concern to McBride several times. McBride acknowledged the fact that he needed counsel but

5

refused to allow his appointed counsel to represent him because according to him, his rights had been violated by the appointed counsel.

Having been informed of no specific instance of how McBride's rights had been violated by his counsel, the trial court told McBride that if he felt he needed counsel, he would have to accept his appointed counsel because there was no evidence that the appointed counsel had done anything wrong, and McBride did not have the right to counsel of his choice.

The trial court also verified that McBride had the educational background and mental capacity to defend himself and that no one had made either promises or threats to coerce him into waiving his right to counsel. After the trial court read the advisement of rights, McBride still insisted on representing himself and signed a written advisement form stating that he had thoroughly reviewed all the dangers and disadvantages of self-representation and had full knowledge of them. Although the trial court granted McBride's request to proceed pro se, it also appointed McBride with "standby counsel" that could answer questions about trial procedure.

A jury trial was held from September 17-19, 2012. On September 19, 2012, the State dismissed Count VIII, and the jury found McBride guilty on Counts I through VII. During McBride's sentencing hearing on October 5, 2012, the trial court merged Count I into II, Count VI into Count III, and Count VII into Count IV and sentenced McBride to six years of incarceration on Count II and eight years each on Counts III, IV, and V, with

each sentence to run consecutively, for a total aggregate sentence of thirty years. McBride now appeals.

## DISCUSSION AND DECISION

### I. Waiver of Right to Counsel

McBride first alleges that the trial court erred when it permitted him to proceed pro se because his waiver of his right to counsel was not knowing, voluntary, and intelligent. Specifically, McBride claims that he only waived his right to counsel because a judge pro tempore informed him that by his actions of filing pro se motions and interposing objections, he had waived his right to counsel.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. Jones v. State, 783 N.E.2d 1132, 1138 (Ind. 2003). Implicit in the right to counsel is the right to self-representation. Drake v. State, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008). However, before a defendant waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. Jones, 783 N.E.2d at 1138. We review de novo a trial court's finding that a defendant waived his right to counsel. Miller v. State, 789 N.E.2d 32, 37 (Ind. Ct. App. 2003)

"The right to counsel in a criminal proceeding does not mean that the defendant has an absolute right to be represented by counsel of his own choosing." Smith v. State, 474 N.E.2d 973, 978-79 (Ind. 1985). A trial court may, in the exercise of its sound discretion, deny a defendant's request for a new court appointed attorney. Luck v. State,

7

466 N.E.2d 450, 451 (Ind. 1984). Such a ruling is reviewable only for an abuse of discretion. Id.

Our Supreme Court has stated that there are no specific "talking points" a trial court must follow when advising a defendant of the dangers and disadvantages of proceeding without counsel. Poynter v. State, 749 N.E.2d 1122, 1126 (Ind. 2001). Instead, a trial court needs only to come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his or her right to counsel. Id. Our Supreme Court has adopted four factors for a trial court to consider when determining whether a knowing, voluntary and intelligent waiver has occurred:

> the extent of the court's inquiry into the defendant's decision, other evidence into the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, the background and experience of the defendant, and the context of the defendant's decision to proceed pro se.

Id. at 1127-28. In making this analysis, a trial court is in the best position to assess whether the defendant has made a knowing, voluntary, and intelligent waiver, and the trial court's finding will most likely be upheld "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." Poynter, 479 N.E.2d at 1128.

We are perplexed by McBride's involuntary waiver claim because he does not claim that the trial court failed to advise him of the advantages of having an attorney represent him. He makes no argument that the four Poynter factors were not met in his case but instead claims that he only waived his right to counsel because at a waiver of

8

counsel hearing on July 31, 2012, a judge pro tempore informed him that he had waived his right to counsel by his actions of filing pro se motions and interposing objections. This is inaccurate because the record clearly shows that the judge pro tempore did not explicitly tell McBride that he had waived his rights by filing motions and briefs pro se. Instead, McBride was informed that if he wished to represent himself and continue filing motions and briefs pro se, the court would have to relieve his counsel of her obligations because McBride was attempting to take the lead in his own defense, thus placing his attorney at risk. Tr. p. 435. The trial court further stated that if McBride wished to allow his counsel do her job, she would continue to represent him and that this was his choice. Id. Moreover, not once during the August 16, 2012 hearing did McBride express to the trial court that he was waiving his right to counsel because he was advised by the judge pro tempore that his rights had already been waived.

McBride also makes the argument that he had requested, more than once, that the trial court appoint him alternative counsel but that his request was denied, thus showing that his waiver of right to counsel was involuntary. We reject McBride's contention because McBride is not entitled to appointed counsel of his choosing. Smith, 474 N.E.2d at 978-79. And he presented no evidence establishing that his appointed counsel was ineffective. Accordingly, this argument fails.

## II. Show-up Identification

McBride also claims that the trial court committed fundamental error when it admitted evidence obtained through an improper show-up identification procedure.

9

Specifically, he argues that the show-up identification was overly suggestive because he was in handcuffs and the victims were informed before the identification that the police had recovered their properties from the defendant. McBride further contends that even though he failed to object at trial, the admission of the show-up identification evidence was fundamental error.

The admission or exclusion of evidence falls within the sound discretion of the trial court, and its determination regarding the admissibility of evidence is reviewed only for an abuse of discretion. Gordon v. State, 981 N.E.2d 1215, 1217 (Ind. Ct. App. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effects of the facts and circumstances before the court. Id. To preserve an error for review, the specific objection relied upon on appeal must have been stated in the trial court as a basis for the objection. Hale v. State, 976 N.E.2d 119, 123 (Ind. Ct. App. 2012). Thus, a claim may be waived for the purposes of an appeal where the defendant failed to object that the evidence was improperly admitted. Id. at 1218.

As discussed above, the trial court specifically informed McBride that he would be responsible for objections and that those objections were how McBride would preserve errors for appeal. Tr. p. 453. The trial court further advised McBride that if he failed to make objections, he would waive those errors on appeal. Id. McBride stated that he understood these advisements. Id.

McBride admits that he did not oppose the admission of the show-up identification and that he did not move to suppress this evidence or object to its admission at trial. Appellant's Br. p. 19. Thus, these issues are waived.

McBride attempts to avoid waiver by invoking the fundamental error doctrine. In support of this contention, McBride claims that the show-up identification procedure was unduly suggestive because the suspects were the only choice offered, as opposed to a line-up or photo array where multiple options are presented to the witnesses. However, the fundamental error doctrine is an extremely narrow doctrine and "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Gordon, 981 N.E.2d at 1218.

Even though our Supreme Court has cautioned against one-on-one show-up identifications because of their inherent suggestiveness, identification evidence gathered via a show-up procedure is not subject to a per se rule of exclusion in accordance with the fundamental error doctrine. Id. Rather, the admissibility of show-up identification evidence turns on an evaluation of the totality of the circumstances and whether those circumstances lead to the conclusion that the confrontation was conducted in a manner that could guide a witness into making a mistaken identification. Id.

In Mitchell v. State, this Court listed several factors for trial courts to consider when determining whether show-up identification evidence was permissible, including the witness's opportunity to view the criminal, the distance between the witness and the

11

criminal during the crime, the lighting conditions, and the length of time between the commission of the crime and the show-up identification. 690 N.E.2d 1200, 1204 (Ind. Ct. App. 1998)

Here, the crime scene was well-lit, and the surveillance video shows that the mask did not completely hide their facial features. State's Ex. 11. Yixiu testified that he could see the shape of the faces of two of the robbers because the masks were very thin. Tr. p. 85-86. The show-up identification also occurred soon after the robbery, and the other witnesses presented testimony regarding their identification of McBride. Moreover, the first officer was at the scene around 4:30 p.m., McBride and Jackson were apprehended few blocks away around 5:00 p.m., and the witnesses were brought in for the show-up identification shortly thereafter. Id. at 53-54, 86, 198.

Under these circumstances, McBride has failed to show that the show-up identification was unduly suggestive. The State presented the surveillance video at trial as well as evidence that McBride and Jackson were apprehended wearing the same clothes the robbers were said to have been wearing with other stolen items found were they were apprehended. Id. at 255-65, 283; State's Ex. p. 11, 48-53.

Nevertheless, McBride maintains that the show-up identification was unduly suggestive because the witnesses were told by the police that they had recovered the stolen property from them before the witnesses were asked to make the identification. Appellant's Br. p. 18. However, Cai did not testify that any police officer told her anything that would have influenced her identification, and none of the other witnesses

12

testified that they saw the items observed by Cai or that they were influenced by anything leading up to their identifications.

As a result, when considering the circumstances here, McBride's claim of fundamental error fails.

### III. Sentencing

### A. Abuse of Discretion

McBride next argues that the trial court erred in imposing consecutive sentences. Specifically, he claims that even though he was sentenced to less than the advisory term on each of the class B felonies, the trial court erred by ordering that his sentences run consecutively, especially considering the fact that he has a minor criminal history.

The decision to impose consecutive sentences lies within the discretion of the trial court. Ind. Code § 35-50-1-2; Gilliam v. State, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009). However, a trial court is required to state its reasoning for imposing consecutive sentences. Gilliam, 901 N.E.2d at 74. In order to impose consecutive sentences, a trial court must find at least one aggravating circumstance. Owens v. State, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009). It is a well-established principle that the existence of multiple crimes or victims constitutes a valid aggravating circumstance that a trial court may consider in imposing consecutive sentences. O'Connell v. State, 742 N.E.2d 943, 952 (Ind. 2001).

During McBride's sentencing hearing, the trial court stated that the sentences should run consecutively because McBride and his co-defendant had committed the

13

crimes against multiple victims in the presence of a six-year-old. Tr. p. 428. These are indeed valid aggravating circumstances that can be used to impose consecutive sentences.

McBride also alleges that the consecutive sentences are not appropriate because he has a minor criminal history. Appellant Br. p. 20. He further claims that he is the father of a three-year-old daughter and that imprisonment would result in undue hardship to him or his dependent. Id. at 24-25. Thus, it appears that McBride is arguing that the trial court erred by failing to find mitigating factors that were supported by the evidence.

Although the failure to find mitigating circumstances that are clearly supported by the record may suggest they were overlooked, a trial court does not have to afford the same credit or weight to the proffered mitigating circumstance as a defendant may suggest. Thacker v. State, 709 N.E.2d 3, 10 (Ind. 1999). Moreover, if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. Anglemyer v. State, 868 N.E.2d 482, 493 (Ind. 2007).

In this case, the trial court in fact considered McBride's contentions that he had a less severe criminal history than his co-defendant and that imprisonment would result in undue hardship to him or his three-year-old daughter. However, the trial court found that these factors were not significant and, thus, were not factors that would have an impact on the sentence. Thus, McBride's claim fails.

McBride also alleges that because he proceeded pro se, he was unaware of the statutory factors that the trial court could have considered under Indiana Code section 35-

14

38-1-7.1 when sentencing him. Appellant Br. p. 24. McBride's lack of knowledge regarding this statute does not affect the trial court's sentencing decision. As discussed above, McBride's waiver of counsel was knowingly, voluntarily, and intelligently made. Thus, he was therefore responsible for knowing what statutory factors he should argue at his sentencing hearing.

## B. Inappropriate Sentence

Finally, McBride argues that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B). Under this rule, we have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, this Court concludes the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). It is the defendant's burden to "persuade the appellate court that his or her sentence has met the inappropriateness standard of review." Anglemyer, 868 N.E.2d at 494.

Here, McBride has failed to make any discernible argument regarding the nature of the robbery or his character. Thus, we find that he has failed to present a cogent argument in support of this claim and has, therefore, waived the issue. See Ind. App. Rule 46(A)(8)(a).

Waiver notwithstanding, regarding the nature of the offenses, we note that the advisory sentence is the starting point our legislature has selected as an appropriate sentence for the crime committed. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). The advisory sentence for both class B felony criminal confinement and class B felony

robbery is ten years with a sentencing range from six years to twenty years. I.C. § 35-50-2-5. McBride was sentenced to six years on the felony confinement conviction and eight years each on the felony robbery convictions. Thus, for each of his convictions, McBride's sentences fell below the advisory term.

Our review of the record reveals that McBride committed multiple crimes of violence. McBride and the other men robbed the victims while armed with guns that they used to physically assault the victims. They also bound the victims with duct tape and confined them in the kitchen with guns pointed at them. And finally, they engaged in this conduct in the presence of a six-year-old boy.

Notwithstanding these circumstances, McBride claims that the offenses should be considered as being less serious because the guns recovered were unloaded and he could not have shot anyone during this incident. However, McBride and the other men used the guns in a threatening manner causing the victims to experience substantial fear. Indeed, although the guns were not fired at the victims, the guns were used to inflict bodily injuries on the victims. Thus, McBride's nature of the offense argument avails him of nothing.

Likewise, our review of McBride's character reveals that McBride has a lengthy criminal history that involves prior crimes of violence. As a juvenile, McBride had four true findings for battery and one for disorderly conduct. PSI p. 4-5. As an adult, McBride has convictions for class D felony battery, class A misdemeanor resisting law enforcement, and violation of his probation. Id. at 5-6.

16

McBride argues that the State contended at sentencing that he was at a very high risk to reoffend but that there was nothing to support the State's contention but for the deputy prosecutor's speculations. Notwithstanding this claim, that McBride is likely to reoffend was not an aggravating circumstance considered by the trial court. However, McBride's criminal and juvenile histories demonstrate that he has no respect for our judicial system despite the opportunities that were offered to him to change. As a result, McBride has failed to show that his sentence was inappropriate.

## Conclusion

In sum, we conclude that McBride made a knowing, voluntary, and intelligent waiver of his right to counsel. We also conclude that McBride waived his objection to the show-up identification, and the show-up procedure did not amount to fundamental error. Finally, we conclude that the trial court neither abused its discretion in sentencing McBride nor sentenced him inappropriately.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.