## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2017, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Allison Moore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 15, 2017

Court of Appeals Case No.
69A05-1601-CR-68

Appeal from the Ripley Circuit Court

The Honorable Jeffrey L. Sharp, Judge

Trial Court Cause No.
69C01-1301-MR-1

**Pyle, Judge.**

# Statement of the Case

Allison Moore ("Moore") appeals the sentence imposed following her convictions for murder,[1] Class B felony burglary,[2] and Class B felony conspiracy to commit burglary.[3]  She specifically contends that the trial court abused its discretion in imposing consecutive sentences and that her one-hundred-and-five (105) year sentence is inappropriate.  Concluding that the trial court did not abuse its discretion in imposing consecutive sentences and that her sentence is not inappropriate, we affirm.

# Issues

1.  Whether the trial court abused its discretion in imposing consecutive sentences.

2.  Whether Moore's sentence is inappropriate.

# Facts

While having dinner on December 29, 2012, twenty-two-year-old Ohio resident Moore asked her mother if she would "tell on" Moore if Moore told her that she had killed someone.  (Tr. 2404).  Moore's mother responded that she would, and Moore replied that she would not confide in her mother if she ever did anything like that.

---

[1] IND. CODE § 35-42-1-1.

[2] I.C. § 35-43-2-1.

[3] I.C. § 35-43-2-1; I.C. § 35-41-5-2.

[3] After dinner, Moore and her fifteen-year-old neighbor D.H. ("D.H.") picked up D.H.'s friends, fifteen-year-old K.B. ("K.B."), fifteen-year-old S.N. ("S.N."), and S.N.'s nineteen-year-old brother Ben Nichols ("Nichols"). While they were riding around in Moore's car, D.H., who knew that S.N. carried a .40 caliber handgun, suggested stealing money and drugs from Ryan Jackson ("Jackson") in Cross Plains, Indiana. D.H. claimed that he thought Jackson would have a "couple of thousand dollars." (Tr. 2020).

[4] The drive from Ohio to Cross Plains in Moore's car took forty-five minutes to an hour. Along the way, Moore and the young men smoked marijuana. When they arrived at Jackson's house, Moore parked down the street. D.H. and S.N. covered their faces with a mask, walked to Jackson's front door, and kicked it open. Jackson's mother was asleep on the couch, and Jackson was in his bedroom with his girlfriend, Emily Spencer-King ("Spencer-King").

[5] When D.H. opened Jackson's bedroom door, Jackson slammed it shut. D.H. kicked the door back open and told Jackson he was "going to kill this b[****] on the couch if you don't come out." (Tr. 2029). Jackson opened the door, and S.N. pointed the gun at Jackson and Spencer-King and demanded money and marijuana. Jackson gave D.H. and S.N. two bags of marijuana and $300.00 to $400.00. The two young men ran back to Moore's car and gave the money to Moore, who needed it for a trip to Georgia.

[6] The young men wanted to go home, but a dissatisfied Moore said they "needed to get another one." (Tr. 2034). Moore drove to a house that D.H. was

familiar with but the young men did not attempt to go inside because of an alarm system. D.H. suggested one more stop in Milan and directed Moore to sixty-eight-year-old Nancy Hershman's ("Hershman") house. When they arrived at approximately 12:30 a.m., Moore got out of the car with D.H. and S.N. because she did not "think [they] were doing anything right." (Tr. 2040). Specifically, Moore told the young men that they were "being a bunch of p***ies." (Tr. 2122-23). Moore asked S.N. for his gun and a glove, which he gave her. He also instructed her on how to use the gun's safety.

[7] Moore, D.H., and S.N. approached Hershman's house, and D.H. kicked open the back door. Moore went inside first and the two young men followed. While the young men looked around the house for items to steal, Moore headed directly to a downstairs bedroom, where she discovered Hershman, who was in her pajamas. When Hershman began screaming, Moore told her to "shut up, b****" and not to test her. (Tr. 2178). Hershman pushed Moore and reached for the gun. Moore pushed Hershman back and shot her in the throat.

[8] After the shooting, Moore, D.H., and S.N. quickly ran out of the house without taking any property. On the way back to the car, S.N. asked for his gun back because he was afraid that Moore might shoot him too. When they got back to the car, Moore told K.B. and Nichols that she had shot a woman. Moore further stated that she "thought [she] would have had a little bit more remorse for killing somebody but [she] didn't." (Tr. 2068). Moore drove the four young men back to Ohio.

Hershman's daughter, Dawn Evans ("Evans"), who had been upstairs watching television when she heard a thud, went downstairs and found her mother lying in her bedroom doorway. Evans put a towel on Hershman's neck to try and stop the bleeding. However, because of the extent of Hershman's injury, there was nothing Evans could do to help her mother, and Hershman died in front of Evans.

D.H., S.N., K.B., and Nichols eventually confessed, and the police questioned and arrested Moore.[4] She was subsequently charged with: (1) murder for killing Hershman; (2) burglary for breaking and entering Hershman's home with the intent to commit theft; and (3) conspiracy to commit burglary for agreeing with D.H. or S.N. to commit the burglary of Jackson's home. A jury convicted Moore as charged.

At the December 2015 sentencing hearing, Ripley County Sheriff's Office Deputy and jail administrator Bob Curl ("Deputy Curl") testified that Moore had received thirteen jail write-up reports for incidents such as using abusive language to staff, failing to comply with staff orders, throwing objects at staff, and attempting to destroy property of the staff. In addition, while incarcerated, Moore was charged with battery resulting in bodily injury as a Class A misdemeanor for knowingly or intentionally touching another inmate in a rude,

---

[4] The trial court granted Moore's motion to suppress her police statement. This Court affirmed the suppression in an interlocutory appeal. *See State v. Moore*, 23 N.E.3d 840 (Ind. Ct. App. 2014).

insolent, or angry manner and intimidation for threatening an inmate that had testified at Moore's trial.

[12] Following the sentencing hearing, the trial court issued a detailed seventeen-page Pronouncement of Sentence, which provides in relevant part as follows:

**Aggravating Factors**

**[1.] Nature and circumstances of the crime - Murder and Burglary of Nancy Hershman**

The Court finds the nature and circumstances of the crimes committed by the defendant as a significant aggravating factor. The facts supported by the evidence introduced at trial show that the defendant murdered Nancy Hershman after breaking into her home in the early morning hours of December 30, 2012. The defendant entered the home armed with a .40 caliber handgun loaded with hollow point bullets. Just hours prior to the murder the defendant asked her mother over dinner, "If I ever killed anyone, would you tell on me." Prior to entering the home, the defendant retrieved the gun and glove from one of the co-defendants.

\* \* \* \*

Mrs. Hershman was a random unsuspecting victim lying in her bed presumably safe and secure in her home. The Court finds that this type of crime is extremely heinous in nature. The victim's family continues to feel its effects. Someone randomly picking your house and kicking in the door armed with a deadly weapon in the middle of the night is a horrific nightmare. There was very little, if anything, a home owner or law enforcement could do to prevent this horrific offense. A person who chooses to act with such disregard for another human being's life and

property, and take complete control of another's fate commits the very worst type of crime.

*    *    *    *

A sixty-eight-year-old woman, unarmed and outnumbered, screamed out and made desperate attempts to grab the gun. The Court can only imagine the sheer terror that Mrs. Hershman must have felt in the final moments of her life.

*    *    *    *

Therefore, after reviewing the nature of the offense and the facts surrounding the crime the Court finds that this was a particularly heinous, terrorizing, and deliberate act and considers this to be a significant aggravating circumstance.

**[2.]  Nature and circumstances of the crime - Conspiracy to commit Burglary of Ryan Jackson and Emily Spencer-King**

The evidence shows that the defendant made an agreement with the co-defendants [D.H.] and [S.N.] to rob Ryan Jackson. These parties discussed this plan in the car ride from Colerain, Ohio to Ryan Jackson's home in Cross Plains. The defendant was the driver of the car and completed the overt act as charged by driving to the victim's home. The parties had a lengthy car ride to think about this plan. It was not an impulsive act but yet another deliberate violent crime committed by the defendant.

*    *    *    *

Once again the Court cannot think of a more frightening situation than to be awakened from your sleep by an individual pointing a firearm at you. This burglary was particularly heinous in that the parties were armed with a deadly weapon and threatened to not only shoot Mr. Jackson (the intended victim),

but also his mother. The fact that the burglary took place at night when the victim was at home and in bed, and committed while armed with a deadly weapon makes this crime particularly egregious and goes beyond the basic elements of the offense.

*    *    *    *

The Court finds the facts particularly egregious considering this burglary took place at night, while the victims were home asleep in bed, armed with a deadly weapon and threatened to shoot the victim and his mother. . . . Therefore, the Court finds that nature and circumstances of the crime a significant aggravating factor.

**[3.] Victim over 65**

Under I.C. § 35-38-1-7.1(3), the Court may consider an aggravating factor that the victim was at least sixty-five years of age at the time the defendant committed the offense. At the time of Mrs. Hershman's murder she was sixty-eight years old. Therefore, the Court finds this to be an aggravating circumstance.

**[4.] Lack of Remorse**

[T]he defendant stated immediately after the shooting that, "I've never shot anyone before, I don't know how to feel, and **I thought I would feel worse**." The Court finds that the words spoken by the defendant immediately after the shooting, outside the setting of a sentencing hearing, as extremely persuasive in determining the defendant's level of remorse.

After viewing the defendant's demeanor through the course of these proceedings and considering the defendant's testimony at sentencing and letter to the court with the statements made immediately after the shooting, the Court finds the defendant's alleged remorse as nothing more than shallow self-serving

attempts to help her cause and not true acts of remorse or acceptance of responsibility for her actions. The Court finds the lack of remorse as a significant aggravating factor.

### [5.] Character of the defendant

Testimony was presented at trial that the defendant was aggravated with the co-defendants for not breaking into a residence in between Ryan Jackson's residence and Mrs. Hershman's home. She was so aggravated that when they got to Mrs. Hershman's residence, the defendant stated she was going in because the co-defendants weren't doing it right.

\* \* \* \*

While incarcerated the defendant has received thirteen separate jail write ups, ranging from abusive language to staff, failing to comply with orders from staff, throwing objects at jail staff, and attempting to destroy property of the jail. . . . The defendant has been involved in at least three separate physical altercations while incarcerated. One of which led to a new charge of Battery. . . . The Court also finds it significant that the defendant threatened, Amanda Napier, a jail house informant who testified against her. . . . This threat resulted in a separate charge of Intimidation as a Level 6 felony.

The Court finds that the defendant's lack of respect for authority and rules, inability to control her anger and propensity for violence as aggravating circumstances. Furthermore, the Court finds that these character traits indicate that the defendant is an extreme danger to the community and likely to reoffend.

### [6.] Victim Impact

The Court considers the impact this crime had on Mrs. Hershman's family a significant aggravating circumstance.

Dawn Evans, Mrs. Hershman's daughter, testified that a large part of her life is now gone. . . . The Court also recalls her testimony at trial and the 911 call. Ms. Evans was the first person to find her mother. She witnessed firsthand the damage to the throat of her mother caused by the bullet. She placed a towel on the wound in an attempt to help: but due to the extent of the damage there was nothing she could do. On the 911 call you can hear the fear, desperation and terror in her voice, stating, "My mother is dying right in front of me." She is now not able to live in the home because of these events.

* * * *

The Court recognizes that in any murder there will be an impact on family members. A loved one is lost and the family loses everything that comes with that. However, in this case the court considers the impact on the family with regards to the evidence presented at trial. They had to hear Mrs. Hershman referred to as a [b****] and "old lady." They had to listen to the co-defendants recount the details of the shooting. They had to view pictures of Mrs. Hershman lying dead in the doorway of her bedroom. They had to listen to a detailed account of the damage done by the bullet to Mrs. Hershman's body. They had to view pictures of the wounds taken during the autopsy showing the [three] inch hole in Mrs. Hershman's throat. . . .

Therefore, the Court considers the impact on the victim's family to be greater than the expected or normal impact in a murder and considers it a significant aggravating circumstance.

(Appellant's App. Vol. 6, 2-11).

[13] [The trial court sentenced Moore to sixty-five (65) years for murder, twenty (20) years for burglary, and twenty (20) years for conspiracy to commit burglary. The court further ordered the sentences to run consecutively to each other, for

an aggregate sentence of one-hundred and five (105) years in the Department of Correction].

> The Court recognizes that this is the maximum possible penalty allowed under the law. The Court also believes that maximum penalties should be reserved for the worst offenses and the worst offenders. Given the nature and circumstances of this heinous crime, the character of the defendant, a complete lack of remorse or acceptance of responsibility, and the impact on the victim's family the Court finds such sentence is warranted in this matter.

> Furthermore, the Court finds that after reviewing all of the facts of this case, specifically, the deliberateness of the defendant's actions, the randomness of the victim, the complete disregard of human life exhibited by shooting a human being in the throat with a .40 caliber hollow point bullet in the sanctuary of their home; along with the fact that the victim was a sixty-eight year old woman, unarmed and outnumbered, that this violent act exhibited a level of malicious intent far beyond what was necessary. Therefore, after reviewing those factors the Court finds the defendant is an extreme danger to society and highly likely to reoffend.

(Appellant's App. Vol. 6, 18-19). Moore now appeals.

# Decision

Moore appeals her one-hundred-and-five-year sentence. She specifically argues that the trial court erred in imposing consecutive sentences and that her sentence is inappropriate. We address each of her contentions in turn.

**1. Consecutive Sentences**

[17] Moore first argues that the trial court erred in imposing consecutive sentences. The decision to impose consecutive sentences lies within the discretion of the trial court. IND. CODE § 35-50-1-2. We will affirm an order of consecutive sentences if it is supported by a statement of the trial court's reasoning and at least one aggravating circumstance. *McBride v. State*, 992 N.E.2d 912, 919-20 (Ind. Ct. App. 2013), *trans. denied.*

[18] Here, the trial court explained its reasoning in a sixteen-page order that listed six detailed aggravating circumstances, none of which are challenged by Moore on appeal. These aggravating circumstances included the heinous nature and horrific circumstances of the offenses, the age of the victim, Moore's lack of remorse, Moore's poor character as demonstrated by her lack of respect for authority and rules as well as her inability to control her anger, and the significant impact of the crime on Hershman's family. These aggravating circumstances amply support the trial court's imposition of consecutive sentences, and we find no abuse of the trial court's discretion.[5]

## 2. Inappropriate Sentence

[19] Moore also argues that her one-hundred-and-five-year sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a

---

[5] Moore further argues that "concurrent sentences more fairly reflect [the] episodic nature of [the] Hershman burglary and murder." (Moore's Br. 24). However, as she further acknowledges in her brief, the single-episode rule, which caps the total consecutive sentence for crimes "arising out of an episode of criminal conduct," simply does not apply to violent crimes such as murder and Class B felony burglary. *See* IND. CODE § 35-50-1-2. Moore's argument therefore fails.

sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[20] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Moore was convicted of murder, Class B felony burglary, and Class B felony conspiracy to commit burglary. The sentencing range for murder is from forty-five (45) to sixty-five (65) years, with an advisory sentence of fifty-five (55) years. I.C. § 35-50-2-3. The trial court sentenced Moore to sixty-five (65) years, which is the maximum sentence. In addition, the sentencing range for a Class B felony is from six (6) to twenty (20) years, with an advisory sentence of ten (10) years. I.C. § 35-50-2-5. The trial court sentenced Moore to twenty years for both Class B felony convictions, which is also the maximum sentence. The trial court then ordered the sentences to run consecutively, for a total sentence of one hundred and five (105) years.

[21] With regard to the nature of the offenses, twenty-two-year-old Moore drove a group of young men, including three fifteen-year-olds, from Ohio to Indiana for

the sole purpose of committing crimes. The first stop was Jackson's home, where D.H. and S.N. busted down the door, threatened to shoot Jackson's mother, and robbed Jackson and his girlfriend at gunpoint. The next stop was sixty-eight-year-old Hershman's home. Moore, wearing a glove, entered the home armed with a .40 caliber handgun loaded with hollow point bullets and headed directly to the bedroom, where she found Hershman in her pajamas. After a brief verbal exchange, Moore shot Hershman in the throat and then left her to die.

[22] With regard to her character, we note that Moore appeared to have planned to kill someone on the night of the offenses. Moore asked her mother if she would "tell on" Moore if Moore told her she had killed someone and then drove three fifteen-year-old young men across state lines to commit crimes. (Tr. 2404). After the young men had committed the first crime and given Moore the money they had stolen from Jackson, they were ready to return home. Moore, however, was not satisfied. She went into Hershman's home armed with a gun, walked directly to Hershman's bedroom, and murdered her. Moore then told the young men that she thought she would have had a little more remorse for killing someone but that she did not. After being arrested, and while incarcerated at the county jail, Moore received thirteen write-up reports for bad behavior. Two of these incidents led to charges for battery and intimidation. Clearly, Moore has no respect for the law.

[23]     Based on the nature of the offenses and her character, Moore has failed to persuade this Court that her one-hundred-and five (105) year sentence is inappropriate.

[24]     Affirmed.


Bradford, J., and Altice, J., concur.