## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 28 2018, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

T. Andrew Perkins
Peterson Waggoner & Perkins, LLP
Rochester, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew S. Simons, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 28, 2018 <br><br> Court of Appeals Case No. <br> 25A03-1708-CR-1841 <br><br> Appeal from the Fulton Circuit Court. <br> The Honorable A. Christopher Lee, Judge. <br> Trial Court Cause No. <br> 25C01-1404-FD-213 |

**Friedlander, Senior Judge**

[1] Matthew S. Simons appeals the trial court's denial of his motion to withdraw his guilty plea. We affirm.

[2] Simons presents two issues for our review, which we restate as:

>    1. Whether Simons's waiver of his right to counsel was made knowingly and intelligently.
>
>    2. Whether the trial court erred in denying Simons's motion to withdraw his guilty plea.

[3]     On April 8, 2014, Simons was charged with possession of methamphetamine, a Class D felony;[1] possession of illegal drug lab, a Class D felony;[2] resisting law enforcement, a Class D felony;[3] and possession of marijuana, a Class A misdemeanor.[4] Three years later on May 2, 2017, the morning of trial, Simons entered into a plea agreement in which he would plead guilty to the charge of possession of an illegal drug lab as a Class D felony. In exchange, the State would dismiss the remaining three charges in this case as well as the charges of possession of methamphetamine and possession of paraphernalia in another cause.

[4]     After entry of his plea but prior to sentencing, Simons filed his pro se appearance with a motion to withdraw his guilty plea on June 13. At the hearing on Simons's motion, the court told Simons it would not grant him a different attorney and asked if he wanted to continue being represented by his public defender or to represent himself. Simons replied that he wanted to represent himself. After admonishing Simons regarding the dangers of self-

---

[1] Ind. Code § 35-48-4-6.1 (2006).

[2] Ind. Code § 35-48-4-14.5 (2013).

[3] Ind. Code § 35-44.1-3-1 (2013).

[4] Ind. Code § 35-48-4-11 (2013).

representation, the court granted his request to withdraw the appearance of the public defender and proceeded with the hearing with Simons representing himself. Following the hearing, the court denied Simons's motion to withdraw his guilty plea.

At sentencing on July 17, 2017, the court accepted Simons's plea agreement and sentenced him accordingly to three years with no time suspended, consecutive to his sentence in another cause. Simons now appeals.

We first note that generally a challenge to a guilty plea must be pursued through post-conviction proceedings rather than on direct appeal. *Milian v. State*, 994 N.E.2d 342 (Ind. Ct. App. 2013), *trans. denied*. Nevertheless, a defendant who has sought to withdraw his guilty plea prior to sentencing may challenge the trial court's denial on direct appeal. *Id.* This is such a case.

### 1. Waiver of Counsel

Simons contends that his waiver of counsel at the hearing on his motion to withdraw guilty plea was not knowing or intelligent. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel, and this right encompasses the right to self-representation. *McBride v. State*, 992 N.E.2d 912 (Ind. Ct. App. 2013), *trans. denied*. Nevertheless, before a defendant waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *Jackson v. State*, 992 N.E.2d 926 (Ind. Ct. App. 2013), *trans. denied*.

[8]    The defendant who waives his right to counsel and asserts his right to self-representation should be informed of the dangers and disadvantages of doing so. *Parish v. State*, 989 N.E.2d 831 (Ind. Ct. App. 2013). Our Supreme Court has stated that there are no prescribed "talking points" a trial court is required to include in its advisement to defendants but directed trial courts to come to a "considered determination" that a defendant is making a voluntary, knowing, and intelligent waiver. *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001). In making this determination, the Court has considered four factors: "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se." *Id.* at 1127-28. The Court noted that when applying these factors, the trial court is in the best position to assess whether a defendant has knowingly, intelligently, and voluntarily waived counsel, and the trial court's decision will most likely be upheld where it has made the proper inquiries, conveyed the proper information, and reached a reasoned conclusion. *Id.* We review de novo the trial court's determination that a defendant waived his right to counsel. *McBride*, 992 N.E.2d 912.

[9]    Further, the right to counsel guarantee applies at any "critical stage" of the prosecution where the absence of counsel might diminish the defendant's right to a fair trial. *Esmond v. State*, 20 N.E.3d 213, 215 (Ind. Ct. App. 2014). The proper test for determining whether a particular proceeding is a critical stage to

which the assistance of counsel guarantee applies is whether the defendant is confronted with the intricacies of the law or the advocacy of the State. *Id.*

[10]     In the present case, Simons was advised by the court at his initial hearing in April 2014 that he had a right to be represented by counsel and that, if he could not afford one, the court would appoint counsel. Simons requested the court to appoint counsel, and, after questioning Simons regarding his ability to pay an attorney, the court appointed counsel.

[11]     Soon thereafter, Public Defender Saiz appeared as counsel for Simons. Subsequently, at the request of the parties, the court set a change of plea hearing for March 23, 2015. The hearing was then reset for April 13, 2015 at Simons's request. However, Simons failed to appear for the April 13 hearing, and the court issued a warrant for his arrest.

[12]     In December 2015, while still represented by Public Defender Saiz, Simons filed his pro se Motion for Discovery Material, Motion for Transport Order, and Material and Information in Depositions Motion and informed the trial court that he was in the Cass County jail. The court issued an order stating it would take no action on Simons's filings because he was represented by counsel.

[13]     In April 2016, private counsel filed his appearance for Simons, and Public Defender Saiz withdrew. Simons, now represented by private counsel, filed a pro se Motion for Transport. The court again issued an order stating it would not consider Simons's motion because he was represented.

[14] In June 2016, private counsel filed a motion to withdraw his appearance, stating that "communication between counsel and the Defendant in the above-captioned causes of action has completely broken down" and that "counsel is unable to deal with the Defendant anymore [sic] regarding these cases." Appellant's App. Vol. 2, p. 61. The court granted counsel's motion to withdraw and reappointed Public Defender Saiz. In August 2016, still represented by counsel, Simons filed pro se correspondence with the court seeking discovery materials. The court issued yet another order indicating it would not take any action on Simons's pro se filings because he was represented by counsel.

[15] On January 19, 2017, Simons, although still represented by counsel, filed correspondence with the court seeking transcripts from depositions in addition to lengthy correspondence addressed to the judge requesting a fast and speedy jury trial and outlining suppression of evidence issues he had discussed with his counsel. On January 24, 2017, Public Defender Saiz filed a motion to withdraw his appearance, stating "[t]here has been a breakdown in the attorney/client relationship." *Id.* at 83. While counsel's motion to withdraw was pending, Simons again filed correspondence addressed to the judge. During the hearing at which the court granted Public Defender Saiz's request to withdraw, the court again explained to Simons that it would not consider his pro se filings while he was represented by counsel.

[16] On January 31, Public Defender Breitenstein filed her appearance on behalf of Simons. At a status conference on April 27, less than a week prior to trial, she

informed the court that Simons had informed her that morning that he wanted to request a continuance of the trial and wanted a different attorney. The court then discussed the situation with Simons.

> COURT: Okay. Is that right?
>
> SIMONS: Correct, Your Honor.
>
> COURT: I mean you've had a few attorneys in this case already, Mr. Simons.

Tr. p. 26. Simons then explained that, after viewing his taped statements, he wanted his attorney to conduct a deposition of one of the officers and that his counsel did not believe it was necessary. The court responded, and the conversation continued:

> COURT: All right. I'm going to deny your request for a new attorney. We're on the eve of trial now. This case has been pending for some time. To the extent that there's a request for a continuance that will be denied as well. We are set for trial on Tuesday, and we will commence on that date.
>
> *******
>
> SIMONS: May I ask a question?
>
> COURT: Go ahead.
>
> SIMONS: If I want to pursue to do the deposition and review the evidence of the case, and you're not going to — you're not going to give me another attorney, would I have to go pro se to be able to do that?
>
> COURT: I think that's something you need to talk to your attorney with in getting ready for trial. I mean we're sitting here, we've got a jury panel out, I've gotten the instructions ready, and we're ready to proceed with trial. And so, any concerns you have you need to address with your attorney at this point. Okay.

*Id.* at 27, 28.

[17] On the morning of trial, represented by Public Defender Breitenstein and with the jurors waiting in the hallway, Simons entered into a plea agreement with the State. At the change of plea hearing, the judge asked Simons if he understood his right to be represented by an attorney, including during trial and appeal, and explained to him that, if he could not afford an attorney, the court would appoint one for him. Simons responded that he understood.

[18] On June 13, Simons filed his pro se appearance and motion to withdraw guilty plea. In his motion, Simons stated his belief that he was "entitled to meaningful consultation with a new attorney." Appellant's App. Vol. 2, p. 114. Additionally, included in documents Simons filed with his motion was a letter he wrote to Public Defender Breitenstein in which he stated, "You are fired from representing me!" *Id.* at 124. The trial court set Simons's motion for hearing, and, at the hearing, the following conversation ensued.

> COURT: I set this for a hearing. Mr. Simons filed a motion on his own to withdraw from a plea. Typically, Mr. Simons, I just simply reject those, because you're represented by counsel. Because there had been some discussion in your case about whether you're going to represent yourself, or you weren't going to represent yourself, and so forth, I decided to go ahead and set this for a hearing here today. Ms. Breitenstein, I guess, I'm — before we get started, I did not know if — what role you had to play in this, or if you had a role, or if you object to me even having a hearing at this point in time.
>
> MS. BREITENSTEIN: Your Honor, we were — I had been talking to my client about getting such a motion filed. He went

ahead and submitted one, but I had already had another draft that was being worked on to be filed, so I don't have an objection to proceeding.

COURT:     All right.  Did you have any evidence to present on your request?

MS. BREITENSTEIN:    Yes, Your Honor.  We call — well, and I guess also — my understanding was the motion he filed also included a request either for a different attorney or — so I didn't know if the Court wanted to deal with that first or — if not, I would just call Matt Simons to the stand.

COURT:     Okay.  I'm not going to grant a different attorney at this time, Mr. Simons.  I think we've talked about that the last time I granted you another one.  So do you want to have Ms. Breitenstein represent you or are you going to represent yourself moving forward?

SIMONS:    I don't – I want to represent myself.

COURT:     You want to represent yourself?

SIMONS:    Correct.

COURT:     All right.   Do you understand that there are dangers to self-representation and that, I'm assuming, you don't have the education, the experience, the legal training, and the experience in representation; is that right?

SIMONS:    I have no other choice, Your Honor, if you're not going to appoint me another counsel.

COURT:     Mr. Simons, we have dealt with this issue, in this case for some period of time.  I think when I appointed you an attorney the last time we got towards the end of the case, I told you I wasn't going to do it again, and I'm not.  And so, there are dangers to self-representation.  You have been appointed a very competent, knowledgeable lawyer to represent you in this case.  And if you don't choose to utilize her services, then I'm going to be looking to you to present evidence and argument in this case.  Do you understand that?

SIMONS:     Yeah, MacKenzie Breitenstein was appointed with 60 days on two trial cases, and she prepared depositions on a case that came before this case. And Danny Saiz was on my case for two years, on both cases, and he was allowed to withdraw.

COURT:     Do you want to have a lawyer — do you want to have Ms. Breitenstein to represent you or not in this case?

SIMONS:     No.

COURT:     All right. You understand that you are going — I'm going to be looking to you to present evidence. So the next thing that's going to happen is I'm going to turn to you and say, do you have any evidence to present on this verified motion?

SIMONS:     I do.

COURT:     Okay. And you're prepared to present that evidence?

SIMONS:     Yes, Your Honor. Can we proceed with that today?

COURT:     I was planning on it.

SIMONS:     Okay.

COURT:     Okay. Ms. Breitenstein, I'm going to excuse you at this time. I'm going to find there's been a willing, knowing waiver of an attorney at this point in time.

Tr. pp. 44-46.

[19]     Simons then proceeded on the motion that he had prepared and filed and argued that (1) the fixed sentence of three years contained in the plea agreement was not the sentence he was told he would receive; (2) the State's belated filing of an amended witness list constituted a manifest injustice to his case because it precluded his testing of the chain of custody; (3) certain scientific tests he requested were not conducted; (4) he did not view his taped interviews until the week of trial; (5) no deposition was taken of one of the police officers involved

in the case; (6) Public Defender Breitenstein prepared for the trial of another of Simons's cases before she prepared for the trial of the instant case; and (7) after Simons pleaded guilty, one of the police officers talked to him without his attorney present. The State responded to Simons's contentions by questioning him about the accuracy of the facts he alleged and by calling Public Defender Breitenstein to testify. Simons then cross-examined her at length.

[20] In *Martin v. State*, 588 N.E.2d 1291 (Ind. Ct. App. 1992), Martin entered a guilty plea pursuant to a plea agreement. At the sentencing hearing, he advised the trial court of his desire to withdraw his plea, expressed displeasure with his private counsel, requested the court to appoint counsel, indicated he was unsure of his competence to properly evaluate the withdrawal of his guilty plea, and stated he had alibi witnesses. The trial court approved the withdrawal of Martin's attorney but denied his request for appointment of counsel. The trial court held a hearing on Martin's motion to withdraw plea despite Martin being unrepresented and having raised substantial questions of law regarding his competency and alibi witnesses. Based on these circumstances, this Court concluded that Martin was entitled to the assistance of counsel at the hearing on his motion to withdraw plea and that he did not knowingly and voluntarily waive his right to counsel.

[21] More recently, however, in *Milian*, 994 N.E.2d 342, a panel of this Court distinguished *Martin*. After pleading guilty while represented by counsel, Milian, pro se, moved to withdraw his guilty plea. Subsequently, he also filed a motion requesting the removal of his appointed counsel and expressing his

desire to proceed pro se. The trial court held a status conference on Milian's motions, at which it announced it would allow Milian to proceed pro se with his motion to withdraw plea and it would have his appointed counsel serve as standby counsel.

[22] At the hearing on his motion to withdraw plea, Milian asserted that he was misled by his counsel as to the offense to which he was pleading and the inclusion of an habitual substance offender enhancement and that the State had withheld information from him by delaying discovery. The State responded to Milian's contentions, and the trial court denied Milian's motion. Finding that Milian made repeated requests to proceed pro se when he was represented by counsel and that his motion to withdraw guilty plea did not raise substantial questions of law or issues of fact, this Court concluded it was not error for the trial court to allow Milian to proceed pro se with his motion to withdraw plea.

[23] We find the facts of the present case to be similar to the facts in *Milian*. Like Milian, Simons filed numerous pro se motions while represented by counsel and his motion to withdraw guilty plea did not raise substantial questions of law or issues of fact involving legal arguments. In addition, after being admonished of the dangers of self-representation and when given the choice between representation by appointed counsel or self-representation, Simons twice chose self-representation.

[24] In considering the factors of a knowing and voluntary waiver of counsel within the circumstances of the present case, we first observe that the trial court

admonished Simons that there are dangers to self-representation and warned him that he probably did not have the education, experience, or legal training to represent himself. The court also advised Simons that he had a competent, knowledgeable lawyer, and, if he chose not to utilize her services, the court would expect him to present evidence and argument on his own behalf. Simons twice unequivocally stated he wanted to represent himself, and then asked the court if it could proceed on his motion and indicated he was prepared to present evidence.

[25] Further, it appears from the record that Simons is a high school graduate who has extensive experience with the criminal justice system and its proceedings. In general, the documents on appeal reveal a lengthy criminal history of both felony and misdemeanor convictions. More specifically, his plea agreement in the present case confirms he had another pending cause in Fulton County and other information in the record indicates additional criminal charges in Cass County as well as a very similar motion to withdraw plea in his case in Cass County. Additionally, Simons demonstrated his experience with criminal proceedings in his numerous, detailed pro se filings. In all, he filed nine different motions and/or correspondence with the court seeking discovery materials, transport orders, depositions of witnesses, scheduling of court dates, copies of deposition transcripts, a fast and speedy trial setting, entry of pro se appearance, and withdrawal of guilty plea as well as discussing the suppression of evidence, specific evidence of his case, and his relationships with his attorneys.

[26] Simons claims that he had no choice but to proceed pro se because the trial court declined to appoint new counsel. We note that the right to counsel in a criminal proceeding does not mean that the defendant has an absolute right to be represented by counsel of his own choosing. *McBride*, 992 N.E.2d 912. A trial court may, in the exercise of its sound discretion, deny a defendant's request for a new court appointed attorney. *Id.* When Simons indicated his desire to sever ties with his appointed counsel and his intent to represent himself, the trial court reminded him that he had been warned previously that it would not appoint another new counsel. Prior to Public Defender Breitenstein, Simons had been represented by Public Defender Saiz, as well as private counsel, both of whom withdrew due to a breakdown in the attorney/client relationship. Simons was in no way forced to represent himself; rather, the court gave him the choice to represent himself or continue with his current public defender while making it clear that it would not pander to his cherry picking for counsel.

[27] Moreover, trial courts need not unreasonably indulge a defendant who repeatedly fails to cooperate with appointed counsel. *Poynter*, 749 N.E.2d 1122. The record here demonstrates Simons's inability to work with his counsel. Two different counsel, one private and one appointed, sought withdrawal from Simons's case stating that they were unable to deal with him any longer and that there had been a breakdown in the relationship. Lastly, at the hearing on his motion to withdraw plea, Simons sought to dismiss Public Defender Breitenstein, his third counsel/second appointed counsel. The trial court was

well within its discretion when it denied Simons's request for new appointed counsel.

[28] In light of the facts and circumstances before us, we determine that the hearing on Simons's motion to withdraw plea was not a critical stage of the proceedings to which the assistance of counsel guarantee applied. Nevertheless, we conclude that Simons knowingly and intelligently exercised his right of self-representation.

## 2. Withdrawal of Guilty Plea

[29] Indiana Code section 35-35-1-4(b) (1983) governs motions to withdraw guilty pleas. The court must allow a defendant to withdraw a guilty plea if "necessary to correct a manifest injustice." *Id.* By contrast, the court must deny the motion if withdrawal of the plea would "substantially prejudice[ ]" the State. *Id.* In all other cases, the court may grant the defendant's motion to withdraw a guilty plea "for any fair and just reason." *Id.* Here, we note Simons does not claim the existence of a manifest injustice and the State does not assert that it relied on Simons's guilty plea such that withdrawal of the plea would be substantially prejudicial.

[30] A trial court's ruling on a motion to withdraw a guilty plea comes to this Court cloaked in a presumption of correctness, and we will reverse the trial court only for an abuse of discretion. *Brightman v. State*, 758 N.E.2d 41 (Ind. 2001). To determine whether a trial court has abused its discretion, we examine the

statements made by the defendant at his guilty plea hearing to decide whether his plea was made freely and knowingly. *Id.*

[31] The judge began the plea hearing by confirming that the signature on the plea agreement was Simons's and that he understood the terms of the agreement. The judge then explained that he was going to ask Simons several questions to ensure he understood his rights and was freely and voluntarily pleading guilty. The judge said, "If there is ever a point in time that you don't understand the words that I use or the advisements that I give, please don't hesitate to stop me, and I'll be glad to go over them again with you." Tr. p. 32. Simons responded, "Okay." *Id.*

[32] In further dialogue with the judge, Simons responded that he understood he had a right to a speedy trial by jury, to face and cross examine witnesses against him, to have witnesses testify on his behalf, to have the charges proved beyond a reasonable doubt, to remain silent, and to appeal his conviction following a trial. He also indicated his understanding that by pleading guilty he was giving up all these rights. The judge also confirmed that Simons understood his right to be represented by counsel.

[33] The judge next read the charge of possession of an illegal drug lab and asked the prosecutor to read the relevant statute and explain the potential penalties. The judge then inquired as to Simons's understanding of the statute defining the offense, the range of penalties, the fact that his plea of guilty is an admission that he committed the offense, the fact that he will be found guilty and

sentenced without a trial, and the fact that the court will have knowledge of his criminal history in formulating his sentence. Simons answered that he understood.

[34] The judge continued by asking Simons if anyone had made him any promises, given him anything, or forced or threatened him to plead guilty. Simons responded in the negative. The judge also asked Simons, "Do you feel like your decision to plead guilty is your own free choice and decision?" *Id.* at 37-38. Simons replied, "Yes, sir." *Id.* at 38.

[35] The judge then reviewed with Simons the sentence called for in the plea agreement:

> COURT: Are you now on parole, probation, or a suspended sentence out of this court or any other court?
>
> SIMONS: I'm currently sentenced out of another court.
>
> COURT: Okay. And is that the Cass County case that's in the plea agreement?
>
> SIMONS: Correct, Your Honor.
>
> COURT: Okay. The plea agreement calls for this sentence to run consecutively to that case. I think that that's probably mandatory, but in any event, if I accept the plea agreement, then it will run consecutively to that case, which means that you will have to serve this sentence before you serve the other sentence or vice versa. In other words, they're not going to be served at the same time. Do you understand?
>
> SIMONS: And that is the statute?
>
> COURT: What now?
>
> SIMONS: That is the statute to run –

COURT:     I suspect it is.  I'm not sure of the timing of these cases.

SIMONS:    Oh.

COURT:     It is mandatorily consecutive, but in any event you've agreed that it will be consecutive in your plea agreement.

SIMONS:    Okay.

COURT:     Do you understand that?

SIMONS:    I understand.

STATE:     The Cass County case occurred while these were pending, so it would be mandatorily consecutive.

SIMONS:    I understand.

COURT:     Do you follow?

SIMONS:    Yeah.

*****

COURT:     All right.  Mr. Simons, one of the things about your plea agreement is that it is a fixed term plea agreement and if I accept it that means I'm bound by the terms of the plea agreement.  And so, what you need to know is if I accept it, there's not going to be an appeal because there's no reason to appeal something you agree to.  Do you understand that?

SIMONS:    Yes, I do.

*Id.* at 36-37, 38.  The judge asked Simons how he wished to plead, and, upon his plea of guilty, the prosecutor read the factual basis for the plea.  To conclude the plea hearing, the judge found that Simons understood the nature of the charge and the possible sentence, that his offer to plead guilty was freely and voluntarily made, and that there was a factual basis to support the plea.  A little over a month later Simons filed his motion to withdraw plea.

[36] Before denying Simons's motion to withdraw plea, the court listened to the recording of the change of plea hearing and considered Simons's assertions at the hearing on his request to withdraw his plea. As we outlined previously, Simons claimed several reasons for the withdrawal of his plea. In response, the State confirmed with Simons that he was aware of all these facts prior to accepting the plea agreement and entering his guilty plea:

> STATE: You said something to the effect that once you realized all these things had been done, then you realized you needed to file this motion to set aside your plea, but everything you listed, everything you stated happened before the trial, correct?
>
> SIMONS: Everything I stated?
>
> STATE: Yeah. You complained about the videotape, you complained about the editing of the videotape, you complained that [a police officer] wasn't deposed, you complained that [another police officer] was deposed. You knew all of that before the day that you changed your plea. It wasn't a secret is what I'm getting. You knew all of those things.
>
> SIMONS: Yes.

*Id.* at 67.

[37] In denying Simons's motion to withdraw plea, the judge explained:

> [Simons] was clearly explained his rights during the Change of Plea proceeding. The Court specifically addressed the fact that this was a fixed term plea and that if the Court accepted the plea the Court would be bound by its terms. The Court further advised [Simons] that he would be bound by the terms of the plea if accepted. [Simons] indicates no confusion as to the terms of the plea throughout the proceeding or his rights.

Appellant's App. Vol. 2, p. 135. Having reviewed all of these same materials, we are satisfied that the trial court did not abuse its discretion in denying Simons's request to withdraw his guilty plea.

[38] For the foregoing reasons, we conclude that the hearing on Simons's motion to withdraw plea was not a critical stage of the proceedings to which the assistance of counsel guarantee applied; nevertheless, Simons knowingly and intelligently waived his right to counsel at the hearing. We further conclude that the trial court did not abuse its discretion in denying his motion to withdraw his guilty plea.

[39] Judgment affirmed.

Barnes, J., and Bradford, J., concur.